VIRGINIA I. MACKENDRICK, as Executrix of GENE E. MACKENDRICK, Deceased, Appellant, v. NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY, Respondent — Judgment, Supreme Court, New York County, entered December 17, 1970, in favor of defendant following the direction of a verdict is affirmed, without costs and without disbursements. We agree with the comprehensive and well-considered opinion of the trial court. The direction of the verdict was based upon findings that (1) there was a failure to prove that the accumulation of argon gas was caused by defendant's negligence and (2) the defendant did not owe any duty to decedent either pursuant to law or under the terms of the repair memorandum. With respect to the issue of negligence, the dissent concludes that facts were established from which it might be inferred that the accumulation of argon gas was caused by the manner in which one of the defendant's employees replaced an argon gas tank. That conclusion, however, is based upon speculation, and such cannot be the basis upon which to draw an inference of negligence. In the first place, there was no direct evidence that the tank was changed or that it was changed by defendant's employee. Additionally, the explanation for the accumulation of the argon gas as offered by the plaintiff was but one of several possible explanations. The trial court explored the possibilities in detail. For example, it was noted that although the defendant provided a torch with an argon cut-off valve, the decedent chose instead to use his own torch which did not have such valve. The decedent's partner did not remember closing the valve at the flow meter and accordingly, the argon gas could have continued to flow from the welding device. Such explanation for the argon gas accumulation is equally as plausible as that presented by the plaintiff, and would not cast this defendant in liability. " Where

an inference of a defendant's freedom from negligence is equally as probable as an inference of his negligence, a plaintiff may not prevail. Where the balance of possibilities between causes which entail liability and others which do not is so equal that an inference of fact which entails liability is the result of mere speculation, a plaintiff may not prevail". (*Johnson* v. *Tschiember*, 7 A D 2d 1029, 1030.) The dissent also takes issue with the trial court's construction of the repair memorandum and the duties which devolved upon the defendant. The trial court concluded that the duty to provide decedent with a safe place to work, to warn and instruct decedent of the dangers involved, rested upon his employer (Alco). It was further concluded that pursuant to the repair memorandum defendant was only to supply ventilation equipment. These were the only reasonable conclusions which could be drawn from the facts presented. Defendant did not control the work and there was no possibility of it doing anything other than supplying ventilation equipment. Defendant, indeed, was not in any position to see that the equipment was used. It was Alco's duty to make the necessary inspections, to determine what was necessary, to request that defendant supply the necessary services and to see that the equipment was used before allowing its employees into the hard tank. (*Persichilli* v. *Triborough Bridge & Tunnel Auth.*, 16 N Y 2d 136, 146; *Hess* v. *Bernheimer & Schwartz Brewing Co.*, 219 N. Y. 415, 418, 419.) We note additionally, that neither Alco nor its employees were parties to the repair memorandum. That instrument only created a duty running from defendant to the Navy and to Westinghouse, and breach of the agreement would not create liability to the plaintiff. (See *B. L. W. Realty Holding Co.* v. *Socony Mobil Oil Co.*, 32 A D 2d 312, affd. 26 N Y 2d 1002; *Ramos* v. *Shumavon*, 21 A D 2d 4, affd. 15 N Y 2d 610.) In any event, there was no credible evidence that defendant failed to supply ventilation. Concur — McGivern, J. P., Kupferman, McNally and Tilzer, JJ.; Nunez, J., dissents in the following memorandum: I dissent and vote to reverse and order a new trial. Gene MacKendrick, an employee of Alco Products, Inc., was engaged in repair work consisting of welding repairs to the cooling system in a hard tank of the nuclear submarine *John Marshall*. The coils had been manufactured by his employer and sold to Westinghouse, who installed the cooling system in the submarine. The repairs consisted of spot welding build-up of certain defects in the cooling system detected by X rays. The work was being done pursuant to a memorandum which was signed by the defendant shipyard, the U. S. Navy and Westinghouse, and which provided in its here pertinent part "shipyard should provide access to hardtanks, remove asbestos covering from the heat exchangers and provide lighting and ventilation to the hard tanks." Although neither MacKendrick nor his employer were parties to the agreement, MacKendrick and his fellow workers in the tank were obviously the persons for whose benefit these provisions were made. Argon gas was used in the welding operation. This gas was supplied by the defendant shipyard in a tank installed adjacent to the submarine itself and brought to the area of welding through rubber tubing. MacKendrick had been doing his work for two days prior to the date of death, January 24, 1961, when he entered the hard tank at approximately 9:00 A.M., through a manhole in the deck above the tank approximately 18 inches in diameter. When Braciszewski, MacKendrick's fellow worker, entered into the hard tank a short time thereafter, he found MacKendrick dead. Cause of death was given as asphyxiation due to argon gas. Braciszewski detected the presence of a choking gas when he bent down to examine MacKendrick. The case was tried to Mr. Justice Quinn and a jury. Defendant's motion for a directed verdict was granted

after the close of all testimony and completion of summations. In my opinion the trial court erred. The uncontradicted proof shows that the day before MacKendrick died, defendant's employee Ford observed and was informed that defendant's tank supplying argon gas to the hard tank was low and replacement of the tank necessary. Ford made arrangements for its replacement; that on the evening of January 23 at about 7:30 P.M., the tank was completely depleted of argon gas and an employee of defendant inquired of an Alco employee when he would be finished in the hard tank so that he could replace the empty argon gas tank. It was also established that in replacing the depleted tank, it was necessary to turn off the cut-off valve located in the manifold which had been placed near the hard tank. The record further shows that there was no indication of argon gas in the hard tank at 8:00 P.M. on January 23 when another of Alco's employees left the hard tank. Some 13 hours later (and presumably after replacement of the argon gas tank by defendant's employees) when MacKendrick entered the hard tank, there was a sufficient accumulation of argon gas to asphyxiate him. (See *Seigel* v. *Prima Concrete Constr. Corp.*, 27 A D 2d 946.) Under the facts established it was clear error, in my view, to rule as a matter of law that there was no credible evidence of negligence on defendant's part in the causation of the accumulation of argon gas in the hard tank to cause Mac-Kendrick's death. Defendant owed a duty to those working in the hard tank to check the valves controlling the flow of the deadly argon gas into the tank. Of course, defendant's employee was aware of the inherently dangerous properties of the gas since he deferred replacement of the argon gas until all of Alco's employees had completed their day's work and left the hard tank. The tortured construction of plaintiff's Exhibit 9 by the trial court and by my brethren of the majority, that defendant was required only to supply ventilation equipment and not ventilation, is to me wholly incomprehensible. Defendant bound itself to "provide lighting and ventilation to the hard tanks." If the charge was failure to provide lighting, would my distinguished colleagues rule that defendant's obligation was to provide light bulbs and other lighting equipment, rather than lighting? The proof supports plaintiff's claim that there was evidence of negligence on the part of the defendant in causing an accumulation of argon gas in the hard tank. The case was for the jury. Had the defendant provided the necessary ventilation which it contractually obligated itself to do, MacKendrick's death would have been prevented.