■ REMO DETONE et al., Respondents, v BULLIT COURIER SERVICE, INC., Appellant, et al., Defendant.

The appeal from the order of the same court entered September 25, 1986, which denied defendant's motion for judg-

ment notwithstanding the verdict, is dismissed as academic, without costs.

Plaintiff Remo Detone sustained serious injuries as a result of an altercation with one Ivan Emerson, a messenger employed by defendant Bullit Courier Service. At trial the evidence established that, while delivering a message, Emerson rode his bicycle into the plaintiff. Plaintiff responded by swinging a bag at Emerson who thereupon struck the plaintiff in the head knocking him unconscious and causing him to fall to the ground where he hit his head against the pavement. The course of plaintiff's immediately ensuing hospitalization was long and difficult, and plaintiff was left with lasting neurological impairment.

Plaintiff sought damages from Emerson's employer Bullit relying upon the doctrine of respondeat superior and, alternatively, upon the theory that Bullit had been negligent in hiring Emerson and retaining him in its employ. Both of these theories were put to the jury which, while finding no respondeat superior liability, returned a verdict in plaintiff's favor on the negligent hiring cause.

The evidence before the jury arguably relevant to the issue of Bullit's negligence in hiring Emerson indicated that Emerson had, on two occasions prior to the incident with the plaintiff, been either fired or laid off by Bullit. There was no evidence as to what caused Bullit to fire Emerson, the only testimony being that had it been something more serious than excessive lateness or absence it would have been noted in Bullit's records and Emerson would not have been rehired. Nothing adduced at trial indicated that Emerson had a history of or propensity for violence, much less was there evidence that Bullit had any knowledge that its employee might be dangerous.

An employer may, of course, be required to answer in damages for the tort of an employee against a third party when the employer has either hired or retained the employee with knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm. *(See, e.g., Vanderhule v Berinstein,* 285 App Div 290, *amended on other grounds* 284 App Div 1089; *see also,* 37 NY Jur, Master and Servant, § 164.) The employer's negligence lies in his having placed the employee in a position to cause foreseeable harm, harm which would most probably have been spared the injured party had the employer taken reasonable care in making decisions respecting the hiring and retention of his employees.

Negligence, however, is not presumed. It must be proved by the plaintiff, and it must be proved by a preponderance of the evidence. *(See, e.g., Lembert v 23 Ferry St. Realty Corp.,* 38 AD2d 539, 540, *affd* 30 NY2d 862.)* While recognizing that a jury is accorded great latitude to weigh the evidence and draw reasonable inferences therefrom, we are nevertheless constrained to conclude that the jury in this case could not have found the defendant negligent based on the proof before it.

As noted, the only proof even remotely relevant to the issue of defendant's care in hiring and retaining Emerson showed that Emerson had been fired and rehired. From this and the fact that defendant's employment records did not note the reasons for the firings, plaintiffs would have us conclude that the jury was entitled to infer that Emerson had a history of violent behavior demonstrating a propensity for the sort of conduct exhibited in the incident with the plaintiff, and that defendant knew or should have known of these propensities, such knowledge rendering its reemployment of Emerson negligent. There are many reasons why Emerson might have been fired but no one among them is in any measure proven by the record in this case. Certainly the record provides no basis for the supposition that Emerson was let go because he possessed a violent disposition. Indeed, there was no evidence before the jury showing that prior to the acts complained of Emerson had ever, either with or without the knowledge of defendant, assaulted or threatened anyone. It is well established that " '[w]here an inference of a defendant's freedom from negligence is equally as probable as an inference of his negligence, a plaintiff may not prevail.' " *(MacKendrick v Newport News Shipbuilding & Dry Dock Co.,* 40 AD2d 798, 799, *affd* 35 NY2d 681, quoting *Johnson v Tschiember,* 7 AD2d 1029, 1030; *see also,* Prosser, Torts, ch 6, § 39 [4th ed].)* A finding of negligence may not be based on speculation *(ibid.),* yet there is no more solid basis for the finding made by the jury in this case.

Nor does it seem to us that the striking deficiency in plaintiff's proof of negligence is somehow ameliorated by the alleged faults in defendant's record keeping. We do not think that a messenger service can be reasonably expected in every case to keep detailed accounts of its reasons, however ordinary, for firing or laying off employees. But even if more comprehensive records had been kept by Bullit, there is no reason to suppose that they would have revealed anything helpful to the proof of plaintiff's claim. As noted, it is at least as likely that Emerson was fired for lateness, absence, or other unremarkable violations of company regulations, as for

violent conduct. In the absence of any evidence showing that Emerson had a history of assaultiveness predating the incident with plaintiff, one can only speculate about what more extensive personnel records would have disclosed and how that information, whatever it might have been, would or should have affected defendant's decision to rehire Emerson.

Accepting for purposes of argument the dissent's position that Bullit was under some duty to prevent its employees from riding bicycles, it would appear clear that to the extent such a duty existed it was reasonably met. It is uncontradicted in the record that Bullit, a foot courier service, did not furnish its employees with bicycles, instructed its employees that they were not to ride bicycles and gave its messengers carfare so that the use of bicycle transport to speed deliveries would be unnecessary. Bullit could not have been reasonably expected to do more. Indeed, assuming as the dissent does, that the jury found bicycle riding to be the cause of plaintiff's injury, it is clear that the jury also found, in rejecting plaintiff's respondeat superior claim, that Emerson had exceeded the scope of his employment-related duties when he, contrary to his employer's instruction, elected to use his bicycle to make deliveries. There is, moreover, no evidence that Bullit knew prior to the incident with the plaintiff that Emerson had violated its injunction against bicycle riding, much less is there any evidence that any such violation had resulted in harm. To recite, as the dissent does, the singularly insubstantial bases for the "inferences" supposedly drawn by the jury as to what Bullit knew about Emerson's bicycle riding, or for that matter his propensities, only reinforces the conclusion that the finding of negligence was speculative. The plaintiff has undeniably suffered serious injuries and if sympathy were a relevant consideration would certainly be entitled to an award. As it is not, the award, unsupported by sufficient evidence, cannot stand. Concur—Murphy, P. J., Sandler, Carro and Milonas, JJ.

Asch, J., dissents in a memorandum as follows: Plaintiff Remo Detone suffered severe and permanent brain damage resulting from an assault by a bicycle messenger, defendant Emerson, employed by defendant Bullit Courier Service, Inc. The majority of this court finds the evidence before the jury was legally insufficient to establish a negligent hiring of Emerson by Bullit. I disagree and would affirm the judgment of the Supreme Court.

Initially, of course, we must view the evidence before the jury in the light most favorable to the successful party *(Matter*

of *Kornblum Metals Co. v Intsel Corp.,* 38 NY2d 376, 379). Additionally, for this court "to conclude as a matter of law that a jury verdict is not supported by sufficient evidence * * * [i]t is necessary to first conclude that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial" *(Cohen v Hallmark Cards,* 45 NY2d 493, 499). This test was not met in the case herein.

The messenger Emerson had been fired by defendant Bullit at least three times, two of which occurred before the day of the present assault. Bullit's records did not accurately reflect this information. Nicholas Rozakis, the vice-president and dispatcher of Bullit, was questioned at length about the repeated firings and rehiring of Emerson. He testified that although he did not know the reason for the firing of Emerson, the reason why Emerson would be rehired was "when he performed his duties as a courier, he performed them on time, and favorably for the company".

The jury was entitled to infer from this extended testimony that Bullit's main concern in hiring its employees was their "on time" performance and not other considerations. Since Mr. Rozakis testified bicycles were not to be used by Bullit's employees, again the jury was entitled to infer, as obviously it did, that Emerson's use of a bicycle to make his deliveries, and prior pedestrian accidents by him, had been the cause of his firing, since he performed his duties "on time, and favorably for the company". Strengthening this "inference" for the jury was the testimony by Ted Nicholas, chief executive officer of Bullit, that Emerson was fired once again on August 2, 1983, the date of the assault, for using a bicycle, and that this should have been noted on Emerson's records but that, in fact, it was not.

Additionally, although the application used by Bullit notes it is a "permanent record", Bullit never produced Emerson's original application. This would have shown whether Emerson had listed personal references, as required, and whether Bullit had contacted these references. The failure to produce this document permitted the jury to draw the inference that the information it contained was unfavorable to Bullit *(see,* PJI 1:77). Significantly, other evidence before the jury indicated that on one of the applications which showed a firing of Emerson, the words "Don't Xerox" had been attempted to be eradicated, allowing the strong inference that Bullit was conscious of its negligence in hiring and retaining Emerson.

There was no need, as the majority contends, for the plaintiff to show proof of Bullit's knowledge or negligence in not knowing of a "violent" propensity of Emerson. The correct issue was whether Bullit used reasonable care in hiring and supervising its employees, so as to prevent them from using bicycles whose use could result in clearly foreseeable pedestrian accidents and altercations. The jury decided this issue adversely to the defendant, and the evidence upon which it did so was not only sufficient but went beyond a preponderance of the evidence.