ELOISA VELEZ, Individually and as Administratrix of the Estate of LUCY VELEZ, Deceased, et al., Respondents, v CITY OF NEW YORK, Appellant.

First Department, May 24, 1990

### APPEARANCES OF COUNSEL

*Steve S. Efron* of counsel *(Rosenbaum, Wise, Lerman & Katz,* attorneys)*, for respondents.

*Kristin M. Helmers* of counsel *(Stephen J. McGrath* with her on the brief; *Peter L. Zimroth,* attorney)*, for appellant.

### OPINION OF THE COURT

WALLACH, J.

Decedent was shot and killed in her mother's apartment by her ex-boyfriend while in the escort of two New York City policemen. Hours earlier, in the middle of the night, the boyfriend, also the father of decedent's three-month-old baby, had abducted decedent and the child at gunpoint from the mother's apartment, having gained entry through a bedroom window, and took them to his own apartment in the same neighborhood. There he tied decedent up before leaving with her car keys. In his absence, decedent managed to untie herself and called the police. Two officers arrived, placed decedent in a patrol car and proceeded to search the neighborhood for the boyfriend. They did not find him but they did see decedent's car parked in front of a fire hydrant. Expressing a

desire to return to her mother's apartment to drop off her baby and pick up the keys to her illegally parked car, the officers took her there. Entering the apartment with one of the officers behind her and the other searching the hallways, decedent was shot by the boyfriend, who immediately thereafter shot and killed himself.

Decedent's family and estate brought this action against defendant city claiming that the police owed her a duty of protection against this man which they were negligent in carrying out. Plaintiffs' theory of negligence, for the most part, was that the policemen on the scene departed from accepted police practice when they permitted decedent to enter her mother's apartment, a "crime scene" where she had only hours before been abducted at gunpoint, without first having searched it and rendered it safe. The defense, for the most part, was that the boyfriend's presence in the apartment was not reasonably foreseeable. After being instructed that "[n]egligence requires both a foreseeable danger of injury to another and conduct unreasonable in proportion to the danger", and that "injury as a result of negligent conduct must have been not merely possible, but probable", the jury returned a verdict for plaintiffs, which, after rulings by the trial court and a stipulation by the parties, resulted in a judgment of $500,000 to decedent's estate for her conscious pain and suffering, $85,000 to decedent's mother for loss of support and services, and $975,000 to decedent's infant daughter for loss of support and services and loss of inheritance. Defendant appeals.

We reject, as unpreserved, defendant's argument that plaintiffs' evidence was insufficient as a matter of law to show a special relationship between decedent and the police. The clearest expression of defendant's position concerning the existence of a special relationship came at the close of plaintiffs' case when defendant, responding to a motion by plaintiffs for a directed verdict that a special relationship did exist, argued "that it would be improper at this time or at any time [apparently referring to the possibility that the Trial Judge would reserve decision on plaintiffs' motion until after the jury came in with a verdict] to take away the issue from the jury with respect to whether or not there was a special duty of care owing to [decedent] by the police officers." Clearly, defendant was urging the court to submit the question of a special relationship to the jury. It is true that later, just before

summations, defendant did move for a judgment as a matter of law, but the basis of that motion was not the absence of a duty on the part of the police to protect decedent from harm but the absence of negligence in their performance of the duty. In any event, were we to review defendant's argument on the merits, we would hold that the evidence of a special relationship was not insufficient as a matter of law. Surely, the requisite reliance on decedent's part arguably existed for at least as long as she was in police escort.

■ For purposes of showing that the police were negligent in protecting decedent from harm (see, Sorichetti v City of New York, 65 NY2d 461, 470 [upon a showing of a special relationship, police "actions will be subject to a 'reasonableness' review in a negligence action"]), plaintiffs offered the opinion of a former police officer, qualified as an expert in the apprehension of suspects known to be armed and violent, who testified "with a reasonable degree of certainty" that the policemen on the scene "departed from acceptable police procedures and practices" at several points during the course of the incident, most especially when they acceded to decedent's request to be taken to her mother's apartment without first having searched it. We note that no controverting expert testimony was offered by defendant, and understand its argument to be that there is no valid line of reasoning by which a rational trier of the facts could, on the basis of plaintiffs' expert's testimony, conclude that the policemen on the scene, in protecting decedent from the boyfriend while at the same time enlisting her assistance in searching for him, were constrained by some understood procedure invariably proscribing a victim's reentry on a crime scene before it is searched— that, at best, this testimony, with the benefit of hindsight, showed only that the policemen on the scene exercised poor judgment in allowing decedent to enter the apartment. While we agree with defendant that a municipality cannot be held liable for negligence where police "conduct involves the exercise of professional judgment such as electing one among many acceptable methods of carrying out tasks, or making tactical decisions that, in retrospect show poor judgment, but judgment nonetheless" (Kenavan v City of New York, 70 NY2d 558, 569), the testimony here was that, given the facts observed by the police and the information reported to them by decedent, it was outside the realm of acceptable police practice to have permitted decedent to enter the apartment before it was searched, and that this departure from clearly defined

practice constituted a failure to exercise ordinary care in protecting decedent from foreseeable harm.

Defendant unsuccessfully argued to the jury that the danger in the apartment was not foreseeable. On appeal, it takes that argument several steps further by urging that the assessment of danger is itself a matter of police judgment and discretion immune from judicial second-guessing, and also that other considerations, aside from the remote possibility of danger in the apartment, were pertinent to the decision to permit decedent to enter it before the police, including avoidance of alarm and embarrassment to members of her family who may have been asleep or undressed. Against this, plaintiffs point to circumstances indicative of a strong premonition of danger in the apartment on the part of the police, including their escorting decedent to the door, searching the hallways, and entering the apartment after her, and argue that "[i]n the face of danger so imminent and deadly", a concern for the comfort of innocent persons in the apartment was "not merely a failure of professional judgment, as the city would have it, but an inexcusable and fatal disregard of mandatory police procedures which predictably resulted in [decedent's] death."

Suffice it to say that the testimony of plaintiffs' expert and the other evidence presented at trial were not, as a matter of law, insufficient to show that the boyfriend's presence in the mother's apartment was reasonably foreseeable. Put otherwise, the evidence raised an issue of fact, bearing mostly on plaintiffs' expert's credibility, as to whether the particular circumstances presented to the policemen on the scene left room for judgment and discretion in deciding whether to permit decedent to enter the apartment before it was searched. That being so, it cannot be said, as matter of law, that the decision of the police to permit decedent to enter the apartment was in conformity with accepted police procedure, and the question of negligence was properly submitted to the jury.

■ We modify the judgment to eliminate the award for decedent's pain and suffering because of plaintiff's failure to serve a timely notice of claim (*Gibbons v City of Troy*, 91 AD2d 707). Precedent forecloses plaintiff's argument that a defense based on this failure was waived because not affirmatively raised until trial (*Camarella v East Irondequoit Cent. School Bd.*, 34 NY2d 139, 142; *Pierson v City of New York*, 56 NY2d 950, 955; *Hochberg v City of New York*, 99 AD2d 1028, 1029, *affd* 63 NY2d 665).

We have considered defendant's other arguments and find them to be without merit.

Accordingly, the judgment of the Supreme Court, Bronx County (Hansel McGee, J.), entered March 29, 1988, upon a jury verdict, which, *inter alia,* awarded plaintiff estate $500,000 upon decedent's cause of action for conscious pain and suffering, together with interest, costs and disbursements, should be modified, on the law, to eliminate such award for conscious pain and suffering, and otherwise affirmed, without costs.

KUPFERMAN, J. P., CARRO, MILONAS and SMITH, JJ., concur.

Judgment, Supreme Court, Bronx County, entered on or about March 29, 1988, unanimously modified, on the law, to eliminate the award for conscious pain and suffering, and otherwise affirmed, without costs and without disbursements.