■ ELVIS GOTOY, Respondent-Appellant, v CITY OF NEW YORK et al., Appellants-Respondents. [670 NYS2d 592] —In an action to recover damages for personal injuries, the defendants City of New York and New York City Police Department and the defendant Louis Legget separately appeal from a judgment of the Supreme Court, Kings County (Barasch, J.), dated February 1, 1996, which, upon a jury verdict finding the defendants City of New York and New York City Police Department 60% at fault in the happening of the accident, and the defendant Louis Legget 40% at fault in the happening of the accident, *inter alia*, is in favor of the plaintiff and against the defendants in the sum of $160,000 for past lost earnings and $1,200,000 for future lost earnings; the plaintiff cross-appeals from the same judgment.

Ordered that the appeal of the defendant Louis Legget and the cross appeal are dismissed as abandoned, without costs or disbursements; and it is further,

Ordered that the judgment is modified, on the law and the facts, and as a matter of discretion, (1) by deleting the provisions thereof which awarded damages to the plaintiff for past lost earnings and future lost earnings, and substituting therefor a provision severing the plaintiff's causes of action to recover damages for past lost earnings and future lost earnings, and granting a new trial with respect thereto, and (2) by deleting the provision thereof which awarded interest on the judgment at the rate of 9%, and remitting the matter to the Supreme Court, Kings County, for a determination of the rate of interest in accordance herewith; as so modified, the judgment is affirmed, with costs, unless within 30 days after service upon him of a copy of this decision and order, with notice of entry, the plaintiff shall serve and file in the office of the Clerk of the Supreme Court, Kings County, a written stipulation consenting to reduce the verdict as to damages for past lost earnings from the sum of $160,000 to the sum of $145,000 and as to damages for future lost earnings from the sum of $1,200,000 to the sum of $775,000, and to the entry of an appropriate amended judgment in his favor; in the event that the plaintiff so stipulates, then the judgment, as so reduced, amended, and modified, is affirmed insofar as appealed from by the City of New York and the New York City Police Department, without costs or disbursements, and the matter is remitted to the Supreme Court, Kings County, for the entry of an appropriate amended judgment with the rate of interest to be determined by the court in accordance herewith.

The contention of the defendants City of New York and New

York City Police Department (hereinafter the City defendants) that the plaintiff failed to establish the existence of a "special relationship" between the municipality and the plaintiff (*see, Cuffy v City of New York*, 69 NY2d 255, 260) is unpreserved for appellate review (*see, Velez v City of New York*, 157 AD2d 370, 372-373).

The City defendants further contend that, even if the police were negligent in rendering assistance to the plaintiff, their negligence was not the proximate cause of his injuries because the defendant Louis Legget's act of colliding with the plaintiff's disabled vehicle was a superseding, intervening act relieving them of liability. However, when, as here, the intervening act is a natural and foreseeable consequence of the circumstances created by the defendants, the causal connection is not severed (*see, Kush v City of Buffalo*, 59 NY2d 26, 33).

Contrary to the City defendants' contention and the conclusion reached by our dissenting colleagues, the court did not err in failing to submit the issue of the plaintiff's comparative negligence to the jury inasmuch as there was no valid line of reasoning or permissible inferences which could have led a rational jury to conclude that the plaintiff was negligent (*see, Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 517). There was no evidence that the plaintiff failed to follow the police officer's safety instructions. When the officer arrived at the scene, the plaintiff asked him if he had any flares. The officer asked the plaintiff if he knew how to use the flares and the plaintiff said that he did not. According to the plaintiff, the officer nevertheless handed him a flare and instructed him in its use. The officer, on the other hand, testified that he offered the plaintiff a flare, but when the plaintiff indicated that he did not know how to use it, the officer did not give him one. Irrespective of that conflict in the testimony, which we note the jury resolved in favor of the plaintiff since it specifically found that the officer gave the plaintiff a flare, there was no testimony that the officer gave the plaintiff any safety instructions when he arrived at the scene. In fact, the officer admitted that he gave no such instructions. According to the officer's own testimony, it was only when he was preparing to leave after he had placed the flares in the road, which took anywhere from two to five minutes, that he told the plaintiff to stand down the roadway in a safer position. As the officer and the plaintiff started to walk in that direction, the plaintiff's disabled vehicle was struck.

With respect to the jury's apportionment of liability between the City defendants and Legget, we note that this issue was not raised on appeal.

We do find, however, that the damages awarded for past and future lost earnings are excessive to the extent indicated.

Further, the City defendants correctly contend that the court had discretion to award interest on the judgment at a rate of less than 9% (see, Rodriguez v New York City Hous. Auth., 91 NY2d 76). Consequently, the matter is remitted for a determination of an appropriate interest rate.

The City defendants' remaining contentions are without merit. Altman, J. P., Friedmann and Goldstein, JJ., concur.

McGinity, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum, in which Krausman, J., concurs: I respectfully disagree with the majority. The trial court's failure to charge the jury on the issue of the plaintiff's comparative negligence was error requiring a new trial. I do, however, agree with the majority that the verdict was excessive under all of the circumstances.

On the evening of November 26, 1989, the plaintiff, returning home from a wedding at approximately 3:45 A.M., was driving on the Brooklyn Queens Expressway eastbound, when one of his tires blew out, causing his vehicle to spin and then come to a stop perpendicular to the guardrail and straddling the left and middle lanes. It was misty and dark. A stranger stopped to help him within 5 to 10 minutes later. After another 10 minutes elapsed, the plaintiff flagged down a passing police car that was transporting a prisoner to Brooklyn Central Booking. The police officer stopped the patrol car about 20 feet ahead of the plaintiff's car, in the center lane, with its multicolored turret and four-way hazard lights turned on. The operator of the police car testified that he was unable to stop the car sooner, i.e., behind the plaintiff's car, and that stopping it in front of the plaintiff's vehicle was the safest option as it was unsafe to back the police car into oncoming high-speed traffic. Further, the police car's lights would be most visible from that point and the prisoner, who had to remain guarded, would be more secure. The operator policeman exited the patrol car while the other police officer remained in the car guarding the prisoner.

The police officer then removed flares from the trunk and placed one by the disabled car. The officer took the remaining flares and set them up between the plaintiff's disabled car and the oncoming traffic about 150 feet from the disabled car. The officer placed the flares at intervals from the first flare to the disabled car, the farthest being approximately 150 feet from the car on a crest of a rise in the road where it would be most visible. As the officer was walking back to the radio car accompanied by the plaintiff, the officer instructed the plaintiff,

for safety, to stand down the road from the disabled car rather than in the front of the car. The officer testified that he then heard the high pitch of a car engine racing over the top of the hill and he turned around and yelled back to the plaintiff to get out of the way as he and the plaintiff started running down the roadway. The officer then saw the vehicle driven by the defendant Legget come over the top of the hill, starting to slide, wheels locked, engine racing. The vehicle slid, the flares came down, and the vehicle hit the disabled car pushing it against the plaintiff, coming to rest some 20 feet past the disabled car. During the time the vehicle was disabled and the flares were being placed, a number of cars drove past the scene without incident.

The plaintiff's theory of negligence against the defendant City of New York was that the police officer departed from accepted and established police practice concerning, *inter alia*, the placement of the patrol car behind the disabled car, the placement of the flares at an inadequate distance from the disabled car, and the failure to place the plaintiff in a position of safety. The trial court, notwithstanding the patrolman's direction to the plaintiff not to stand in front of the car, refused to permit the jury to consider the plaintiff's comparative negligence to which the defendant City took exception. The jury returned a verdict in the plaintiff's favor, apportioning the defendant City's liability at 60% and the defendant Legget's liability at 40%, ascribing no fault to the plaintiff.

It has been determined that instruction on the question of comparative negligence should be given to the jury where there is a valid line of reasoning and permissible inferences which could possibly lead rational persons to the conclusion of negligence on the basis of the evidence presented at trial (*see, Cohen v Hallmark Cards*, 45 NY2d 493, 499). Contributory negligence should not be charged if there is no evidence or insufficient evidence to support it (*see, Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 517).

The jury, as the trier of the facts, is charged with the responsibility of drawing fair inferences from the evidence presented. As this Court stated in *Louise B. G. v New York City Bd. of Educ.* (143 AD2d 728, 730), "[i]t is well settled that the question of contributory or comparative negligence is almost always a question of fact and primarily a jury function". What is required is comparison of "conduct which, for whatever reason, the law deems blameworthy, in order to fix the relationship of each party's conduct to the injury sustained and the damages to be paid by the one and received by the other as

recompense for that injury" (*Arbegast v Board of Educ.*, 65 NY2d 161, 168). In the instant case, I submit that there is a valid line of reasoning that could rationally support a finding of comparative negligence.

Here, the plaintiff failed to follow the safety instructions of the police officer and, as there was a dispute as to whether the plaintiff asked the police officer for a flare to place in the road, the failure to charge the issue of the plaintiff's comparative negligence was particularly inappropriate. The jury could, from the facts presented, infer that the plaintiff was negligent in disregarding the police officer's instructions by placing himself directly in harm's way rather than by assuming a position of safety as he was instructed to do. Since the trial court, in denying the defendant City's request for a charge on comparative negligence, effectively directed a verdict on this issue in favor of the plaintiff, it deprived the defendant City of the opportunity to have the triers of the facts draw whatever inferences they could from the evidence presented. It was, therefore, error to fail to charge the jury on the issue of comparative negligence.

In addition to the error of the trial court in failing to charge comparative negligence, I would reverse on the additional ground that the 60-40% apportionment of liability was against the weight of the credible evidence. It was conceded by all present at the accident scene, with the exception of the defendant Legget, that the flares were in place and the patrol car's dome lights and hazard lights were operating when the accident occurred. The Legget vehicle was heard with a racing engine coming over the top of the hill at a fast pace in inclement weather on a slippery roadway when it struck down the flares and hit the disabled car. In my view, under all of the circumstances, to assign only 40% liability to the defendant Legget was against the weight of the credible evidence and requires a new trial.