[677 NYS2d 130]

MADALINA RODRIGUEZ, Respondent, v UNITED TRANSPORTATION Co., Doing Business as SONAT TRANSPORTATION Co., et al., Defendants, and SONAT TRANSPORTATION Co., Appellant.

First Department August 27, 1998

**APPEARANCES OF COUNSEL**

*Eugene H. Lieber* of counsel, New York City (*Lieber & Lieber,* attorneys), for appellant.

*Louis J. Cerrato* of counsel, New York City (*Weiser & Associates, P. C.,* attorneys), for respondent.

### OPINION OF THE COURT

SULLIVAN, J. P.

This action for personal injuries arises out of the October 28, 1987 rape and assault of plaintiff, mentally retarded and 27 years of age at the time, by one Felipe Figueroa, employed as a bus driver by defendant Sonat Transportation Co., which provided plaintiff with transportation services to and from the Terence Cardinal Cooke Health Care Center (TCC), where she was receiving counseling as an outpatient. Insofar as is relevant to this appeal, plaintiff alleges that Sonat was aware of Figueroa's propensities and was negligent in its hiring and retention of him.* Having been awarded summary judgment dismissing the complaint against it, TCC is no longer in the case. The matter is before us on Sonat's appeal from the denial of its motion for summary judgment dismissing the complaint.

Sonat, which was in the business of transporting mentally and physically handicapped persons to and from various medical facilities, had employed Figueroa for nine years at the time of the incident. He had no prior criminal record. He had never been arrested or accused of abusing a patient. In fact, he had never even been the subject of a complaint. His operator's license had never been suspended or revoked.

At her pretrial deposition, plaintiff testified that in October of 1987 she visited TCC on Tuesdays to see her social worker and for medical and dental care. She also attended a Federal Employment and Guidance Service (FEGS) program five days a week. On the day in question, she attended a FEGS program in the morning, having gone there by bus. She left the program at about 2:00 P.M., alone, and saw Figueroa waiting outside in a Sonat van. She testified that Figueroa threw her into the van and drove her to a public park where he sexually molested and assaulted her. When examined after the attack, plaintiff was found to have gonorrhea.

It should be noted that there is no record of payment to Sonat for transporting plaintiff on the date in question. Plaintiff testified that Figueroa had transported her to TCC the day

---

* The IAS Court found that Figueroa's acts were not committed within the scope of his employment and dismissed that part of the complaint alleging liability on Sonat's part based on respondeat superior. Plaintiff does not pursue that issue on appeal.

before and, on that occasion, had asked her for the approximate time of her departure from the FEGS program the next day. The trip ticket for that date, October 27, 1987, shows that the driver was one Austin, not Figueroa. In any event, despite his steadfast denial of any physical contact with plaintiff and of having a sexually transmitted disease, Figueroa pleaded guilty to sexual abuse in the first degree in full satisfaction of the charges brought as a result of this incident, in exchange for a promised sentence of probation. Notwithstanding his admission of guilt, Figueroa, married and living with his wife and young son, now claims that he pleaded guilty out of family considerations.

Sonat's principal testified that it was not its practice to require prehiring employee references. Figueroa's prior employment had never been checked. In fact, he never even filled out an employment questionnaire. He was taught to be courteous and helpful to the patients. He was warned that some of the patients were unruly and might strike the driver but that, in no event, was a driver to retaliate. His only training in the handling of mental patients was a one-week assignment observing an experienced driver. Figueroa's experience at Sonat also included the transportation of patients to Bellevue Hospital, New York Hospital and Woodhull Hospital.

The IAS Court denied summary judgment, finding issues of fact as to whether Sonat was negligent in the hiring, training and supervision of Figueroa. Since plaintiff offered nothing as to Figueroa's background that would have placed Sonat on notice of or alerted it to a potential propensity for violence or sexual abuse, she failed to show that, had Sonat investigated, trained and supervised Figueroa before and during his employment, the assault would not have taken place. Accordingly, we reverse and grant summary judgment dismissing the complaint.

Liability in such cases is imposed not necessarily because of any special relationship between the employer and the injured party but, rather, because of the employer's negligence in selecting or retaining, for a position rife with the potential for harm to others, an employee with a history of or propensity for violence. (*See generally*, *Haddock v City of New York*, 75 NY2d 478.) The negligence of the employer in such cases is direct, not vicarious.

This record is bereft of even a scintilla of evidence that Figueroa's background, both before and during his nine-year employment with Sonat, suggested, much less presented, a his-

tory of a propensity for violence or sexual misconduct. As noted, he had no prior criminal record, not even an arrest. He had never been accused of abusing a patient. Nor had he ever been the subject of any complaints. His driver's license had never been suspended or revoked. As Sonat's principal testified, had there been a complaint against Figueroa, he would have been fired. Thus, as this record shows, plaintiff's evidence is fatally deficient in a critical aspect. She has failed to tender any evidence of proximate cause. Absent evidence that Sonat's negligence in the hiring, training or supervision of Figueroa led to the incident in question, there is no basis for imposing liability.

In *Gallo v Dugan* (228 AD2d 376, *lv denied* 90 NY2d 806), which involved an employee bartender's assault of a patron, this Court, in upholding the setting aside of a verdict against the employer and dismissal of the complaint, found that the evidence was insufficient to support a finding that the employee, who, for seven years, had worked for the employer without incident, had a propensity for assaultive behavior and that, even if such were proven, the employer knew or should have known of such propensity. In *Kirkman v Astoria Gen. Hosp.* (204 AD2d 401, *lv denied* 84 NY2d 811, *rearg denied* 85 NY2d 858), a security guard, employed by an independent agency, raped a young woman visiting a patient, who then sued the hospital and the security service that employed the rapist. In granting summary judgment dismissing the complaint, the Court held that, insofar as the hospital was concerned, there was no evidence that it had any knowledge that would have made the security guard's criminal act foreseeable. As for the security service, the Court held that, absent evidence that the employer had knowledge of the employee's propensity for the criminal behavior, an employer cannot be held liable for negligent hiring, supervision and retention. There, like here, the security guard had no prior criminal history.

In *Detone v Bullit Courier Serv.* (140 AD2d 278, *lv denied* 73 NY2d 702), the plaintiff suffered injuries as a result of an altercation with a bicycle messenger employed by the defendant. The plaintiff alleged negligence in the hiring and retention of the messenger, who had been fired or laid off on two earlier occasions. Notwithstanding such circumstances, the Court dismissed the complaint, finding that no evidence had been offered indicating that the messenger had a history of or propensity for violence or that the employer had any knowl-

edge that the employee might be dangerous. (*See, Ranieri v Lawlor,* 211 AD2d 601; *Santamarina v Citrynell,* 203 AD2d 57.) Here, we need not reach the issue of whether Sonat knew or should have known of its employee's criminal propensities since the record indisputably establishes that both before and during his employment with Sonat, Figueora displayed no such propensity. Figueroa had an unblemished record.

Plaintiff, citing *Purdy v Public Adm'r of County of Westchester* (72 NY2d 1, 8) and *Pulka v Edelman* (40 NY2d 781, 783-784), also argues that she, a person with special needs, had a special relationship with Sonat so as to impose upon the latter the duty to protect her from the criminal conduct of Figueroa, its employee. This claim of error may not be raised for the first time on appeal. Had the argument been raised in the IAS Court, defendant would have had an opportunity to develop facts necessary to meet it. (*See, Szigyarto v Szigyarto,* 64 NY2d 275, 280; *see also, DiLeo v Blumberg,* 250 AD2d 364.) In any event, the claim is without merit. To impose liability on the employer solely on the basis of such a relationship, without any showing of negligence, as is the case here, would make the employer an insurer of the safety of its passengers.

Accordingly, the order of the Supreme Court, Bronx County (Janice Bowman, J.), entered June 13, 1997, denying defendant Sonat's motion for summary judgment dismissing the complaint, should be reversed, on the law, without costs or disbursements, and the motion granted. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the complaint.

NARDELLI, WILLIAMS and ANDRIAS, JJ., concur.

Order, Supreme Court, Bronx County, entered June 13, 1997, reversed, on the law, without costs or disbursements, and defendant-appellant's motion for summary judgment dismissing the complaint granted.