(October 23, 2001)

■ Eva Diaz, Respondent, v New York Downtown Hospital, Appellant, et al., Defendants. [731 NYS2d 694] —Order, Supreme Court, New York County (Edward H. Lehner, J.), entered January 12, 2000, which denied defendant hospital's motion for summary judgment dismissing plaintiff's claim for damages for negligent supervision, reversed, on the law, without costs, summary judgment granted to defendant hospital and the complaint dismissed as to it. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the complaint as against it.

The motion court erred in denying the hospital summary judgment on plaintiff's negligent supervision claim, since the hospital sufficiently demonstrated that it was not reasonably foreseeable that its independent contractor's employee would sexually assault plaintiff while conducting her vaginal sonogram. The record shows and the plaintiff conceded that the employee had been duly screened and his background sufficiently checked by Progressive, the independent contractor, and that there was "nothing as to [the employee's] background that would have placed [defendant] on notice of or alerted it to a potential propensity for violence or sexual abuse" (*Rodriguez v United Transp. Co.*, 246 AD2d 178, 180). Once the hospital established, and plaintiff failed to rebut, the lack of reasonable foreseeability based on the background check, it was entitled to judgment as a matter of law on a claim for negligent supervision (*Rodriguez v United Transp. Co.*, *supra* at 180-182; *Ray v County of Delaware*, 239 AD2d 755, 757; *N. X. v Cabrini Med. Ctr.*, 280 AD2d 34, 42; *see also, Judith M. v Sisters of Charity Hosp.*, 93 NY2d 932, 933-934; *Mataxas v North Shore Univ. Hosp.*, 211 AD2d 762, 763; *see also, Kladstrup v Westfall Health Care Ctr.*, 183 Misc 2d 11, 13-15).

Plaintiff's further contention that the hospital was negligent in failing to adopt or follow what was allegedly the sole reasonably safe operating procedure in these circumstances, having a female observer present, is without merit. As this record discloses, the procedure cited by plaintiff's expert was merely a recommendation by two professional organizations, not a customary practice or industry standard. Nowhere in the cited literature of the American College of Radiology (ACR) and the

American Institute of Ultrasound in Medicine (AIUM) does it state that a female must be present during a vaginal sonogram. Rather, the guidelines are couched in advisory terms. The ACR literature states "it is recommended that a woman be present" during such a procedure, while the AIUM guidelines provide that "a female member * * * should be present, when possible." Such wording falls well short of establishing the "accepted standard of care" alleged by plaintiff's expert. Certainly had these two august, allegedly nationally prominent professional organizations intended to impose a significant industry safety standard, binding on all members/practitioners nationwide, they would have done so in more obligatory terms. It should be presumed that they stated what they intended, a non-binding, suggested procedure, and nothing more.

Notably, in asserting this alleged industry standard, the affidavit of plaintiff's expert relies solely on the written guidelines, to the complete exclusion of any evidentiary facts supporting an actual custom or practice of radiology. Indeed, the expert's affidavit is barren of any mention of an actual radiological practice of requiring a woman's presence during vaginal sonograms.

To be contrasted are those situations where a plaintiff offers expert evidence of actual customary practices or safety procedures to establish an industry standard. (*See, Miller v Long Is. R. R.*, 212 AD2d 515, 516 [error to preclude plaintiff's expert evidence regarding custom, practice and feasibility of closing train's doors prior to departing station]; *French v Ehrenfeld*, 180 AD2d 895, 896 [error to preclude plaintiff's expert evidence of customary and usual practice of having chimney inspected prior to hookup with heating system].) Although noncompliance with such a customary practice or industry standard may be evidence of negligence (*see, Trimarco v Klein*, 56 NY2d 98, 105-107), the failure to abide by guidelines or recommendations that are not generally accepted standards in an industry will not suffice to raise an issue of fact as to a defendant's negligence. (*See, Ambrosio v South Huntington Union Free School Dist.*, 249 AD2d 346, 347 [failure to comply with State University's Manual of Planning Standards did not raise issue of fact where no evidence that planning standards were generally reflective of a generally accepted safety practice]; *Ray v County of Delaware*, 239 AD2d 755, 757 [mere interposition of safeguard checklist to limit sexual exploitation by therapists, attributed to a licensed psychologist, was inadequate to raise an issue of fact in negligent supervision case].) Accordingly, plaintiff cannot convert these industry recom-

mendations to an industry standard in order to avoid summary judgment. Concur—Sullivan, P. J., Nardelli and Williams, JJ.

Mazzarelli and Saxe, JJ., dissent in a memorandum by Mazzarelli, J., as follows: I would affirm the order appealed from. "[T]he opinion of a qualified expert that a plaintiff's injuries were caused by a deviation from relevant industry standards [generally precludes granting] summary judgment in favor of [a] defendant[ ] (see, e.g., *Trimarco v Klein*, 56 NY2d 98, 106)." (*Murphy v Conner*, 84 NY2d 969, 972.) In this case, plaintiff submitted the affirmation of a qualified expert radiologist in opposition to defendant's motion for summary judgment. She opined, based in part upon 1995 American College of Radiology (ACR) and American Institute of Ultrasound in Medicine (AIUM) guidelines, that by not having a policy or procedure requiring a female employee to be present in the examination room during the sonogram, New York Downtown Hospital departed from the required standard of care.

The ACR and AIUM guidelines, first issued in 1991, recommended "that a woman be present in the examining room during a vaginal sonogram, either as an examiner or a chaperone." The guidelines have since been periodically revised. However, the 1995 versions, which formed a part of the basis for the expert's affirmation, were not materially different from those in effect at the time of this incident. By recommending the presence of a woman during a vaginal sonogram, the industry explicitly recognized the risk of the precise sexual misconduct which took place in this case.

Citing *Ambrosio v South Huntington Union Free School Dist.* (249 AD2d 346) and *Ray v County of Delaware* (239 AD2d 755), the majority states that the ACR and AIUM guidelines are insufficient to reflect generally accepted standards in the radiology industry. I disagree. Moreover, the cases cited by the majority are distinguishable on their facts. In *Ambrosio*, the complaint was dismissed based upon the conclusory nature of an expert's affidavit, as well as the fact that it was unclear whether a State University of New York "Manual of Planning Standards" reflected generally accepted architectural safety practices in recommending the use of impact resistant glass in school windows. There was also an issue in that case as to whether the standards in the university manual even applied to the type of window at issue. In *Ray* (at 757), the claim for vicarious liability was dismissed upon the court's finding that a "safeguard checklist to limit sexual exploitation by therapists, attributed to [an individual] licensed psychologist," was insufficient to raise an issue as to an applicable standard of care.

Here, by contrast, plaintiff has submitted a specific protocol which is explicitly recommended by at least two national organizations. In fact, plaintiff's expert affirms that "the ACR, with more than 30,000 members, *is the principal organization of radiologists, radiation oncologists, and clinical medical physicists in the United States*" (emphasis supplied). Plaintiff's expert affirmed that the AIUM is an organization with over 11,000 members, "concerned with the advancement of the art and science of ultrasound in medicine and research." In addition to the opinions of these two organizations, plaintiff's expert, whose extensive credentials are unimpeached, opined that "the accepted standard of care for performing ultrasound examinations on female patients, specifically transvaginal sonograms, requires that a female member of the hospital's staff be present during the ultrasound examination."

I would find these submissions sufficient to present the issue of the hospital's negligence to a jury (*Trimarco, supra*; *compare, Judith M. v Sisters of Charity Hosp.*, 93 NY2d 932 [plaintiff did not submit any evidence that hospital deviated from standards of reasonable care]; *Ray, supra* [extensive evidence that clinic provided adequate supervision for social worker]; *N. X. v Cabrini Med. Ctr.*, 280 AD2d 34 [no evidence that hospital breached any duty to protect its patients]).

"Proof of a generally accepted practice, custom or usage within a particular trade or industry is admissible as tending to establish a standard of care, and proof of a departure from that general custom or usage may constitute evidence of negligence [citations omitted] * * *. [I]t need not be shown that the particular custom or usage is universally observed, so long as it is fairly well defined within the particular field." (*See, Cruz v New York City Tr. Auth.*, 136 AD2d 196, 199, *complaint dismissed after remand* 190 AD2d 651, *lv denied* 82 NY2d 654.)

I disagree with the contrast drawn by the majority between the facts of this case and *Miller v Long Is. R. R.* (212 AD2d 515) and *French v Ehrenfeld* (180 AD2d 895). In both *Miller* and *French*, appellate courts reversed trial verdicts for failure to allow expert testimony on the issue of common industry practice. Other than the context of the submissions, I see no distinction between the nature of the improperly precluded testimony in those cases and the evidence offered here in opposition to defendant's motion for summary judgment. In fact, I would urge that because these cases both emphasize the probative value of expert testimony as to custom and practice, *Miller* and *French* actually support denying the instant motion for summary judgment.

I also disagree with the majority's conclusion that a claim of negligence must be dismissed on the ground of unforeseeability, because plaintiff did not establish that the radiologist had a propensity to engage in sexual misconduct (*see, Rodriguez v United Transp. Co.*, 246 AD2d 178 [negligent supervision claim dismissed where no evidence that a bus driver had a propensity to commit sexual misconduct]; *Gallo v Dugan*, 228 AD2d 376, *lv denied* 90 NY2d 806 [bartender]; *Kirkman v Astoria Gen. Hosp.*, 204 AD2d 401, *lv denied* 84 NY2d 811 [security guard]; *Mataxas v North Shore Univ. Hosp.*, 211 AD2d 762 [CAT scan technician]; *Detone v Bullit Courier Serv.*, 140 AD2d 278, *lv denied* 73 NY2d 702 [bike messenger]). By contrast to these cases, the radiologist here was performing a delicate procedure which industry specialists opined should be conducted in the presence of a female observer. The guidelines delineated a foreseeable risk, and I would conclude that their alleged breach here required denial of defendant's motion for summary dismissal of the complaint against it.