Cherry v Utica Dialysis Ctr. (2003 NY Slip Op 51525(U))

[*1]

Cherry v Utica Dialysis Ctr.

2003 NY Slip Op 51525(U)

Decided on December 24, 2003

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 24, 2003

Supreme Court, Kings County
 JOSEPH CHERRY, Plaintiff, vs.
against
UTICA DIALYSIS CENTER and GERARD VEILLARD, Defendants.
Index No. 37532/01

Lewis, Yvonne J.
It is alleged that on March 17, 2001, a staff member of the Defendant. Utica Dialysis Center (hereinafter UDC), allowed the Plaintiff, ambulette driver, Mr. Joseph Cherry, to utilize the wheelchair of a dialysis patient to take another patient home. As a result, the dialysis patient was left stranded for over an hour upon completion of his dialysis. Upon Mr. Cherry's return to the facility, an altercation erupted between him and Defendant Gerard Veillard, a dialysis technician for UDC, who, according to his direct supervisor, subsequently admitted to her that he hit Mr. Cherry ". . .because he was shouting in his face and disrespecting him," whereupon she immediately terminated his employment as required by UDC's "no violence policy."
UDC, by its attorneys, has now petitioned this Court for summary judgment on the grounds that 1. UDC cannot be held vicariously responsible for the actions of its employee, Mr. Veillard, since his actions were outside the scope of his employment (citing Adams v. New York City Transit Authority, 88 NY2d 116, 119, 643 NYS2d 511), and not "condoned, instigated, or authorized" by UDC (citing Yeboah v. Sanpple, 729 NYS2d 32, NY Slip Op. 6569); and, 2. Since UDC did not know or have reason to know that Mr. Veillard had any propensity for violence based on either his pre-hiring background check and recommendations and/or his on-the-job conduct, it cannot be held liable for his negligent hiring, retention, or supervision (citing Kenneth v. Roman Catholic Diocese of Brooklyn, 229 AD2d 159, 654 NYS2d 791).
The Plaintiff, in opposition, argues that this Court should be mindful of the holding in Young Bai Choi v. D & D Novelties, Inc., 157 AD2d 777, 550 NYS2d 376, to the effect that "the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury." In line with that determination, the Plaintiff notes that Mr. Veillard was ". . .acting to further his employer's interest in maintaining control over company property [the wheelchair] when he assaulted the Plaintiff, regardless of defendant employer's instructions to the contrary." In [*2]response to the defense position that Mr. Veillard's actions were not sanctioned by the Defendant employer, the Plaintiff points to the fact that ". . .ambulance drivers must be 'buzzed in' to reach the restricted unit where the subject assault took place and that through an intercom system of communication, either a nurse, technician or receptionist would be responsible for opening said doors." Finally, Plaintiff asserts that the Defendant's alleged "zero tolerance policy" is of no moment here given the Appellate Division, 2d Department's ruling in Jaccarino v. Supermarkets General Corporation, 252 AD2d 572, 676 NYS2d 606, that "contrary to the defendant's contentions, evidence indicating that it specifically instructed its security guards to refrain from physical contact with customers does not compel the conclusion that. . .the security guard in question was acting beyond the scope of his employment when he allegedly assaulted the Plaintiff."
It is well settled that an employee may be held liable for the tortious acts of its employee only if those acts are committed in furtherance of the employer's business and within the scope of his or her employment (See Riviello v. Waldron, 47 NY2d 297 and N. X, v. Cabrini Medical Center, 97 NY2d 247, 739 NYS2d 348). Sexual assaults committed on hospital patients have been repeatedly held to fall outside the scope of hospital employment, (See Judith v. Sisters of Charity Hosp., 93 NY2d 932; Mataxas v. North Shore Univ. Hosp., 211 AD2d 762; Nicolette T. v. Hospital for Joint Diseases/Orthopaedic Inst., 198 AD2d 54; Cornell v. State of New York, 60 AD2d 714). The fact that the assault in the within matter was not of a sexual nature or exacted upon a hospital patient presents no exception or need to depart from the foregoing conclusion, since it is irrefutable that an assault, whether sexual or purely physical in nature, can never be construed as hospital business; i.e., the provision of medical treatment. 
It is firmly established that where there is no prior indication"trigger"within an employee's background to alert an employer of danger, there can be no foreseeable risk of unreasonable harm upon which to rest liability (See Rodriguez v. United Transportation Co., 246 AD2d 178, 677 NYS2d 130; Kirkman v. Astoria General Hospital, 204 Ad2d 401, 611 NYS2d 615).The Cabrini court 280 AD2d 34, more specifically held that ". . .a mere possibility of improper conduct is insufficient to impose liability since, historically, liability for negligence has been determined by what is probable, not merely what is possible (citing Velez v. City of New York, 157 AD2d 370). Hence, the clear rationale here is that where an employee's background is sufficiently investigated and fails to place an employer on notice of potential propensity for violence or sexual abuse, the employer cannot be held liable for its negligent hiring, retention, and supervision of said employee since the risk of any such violence/action cannot be said to have been foreseeable. In the case at bar, Mr. Veillard is not alleged to have displayed any prior propensity for violence, either during his background screening or during his work history. However, the New York Court of Appeals, in Cabrini, supra 97 NY2d 247, set forth a clear distinction between "an attack that takes place in the absence of a defendant's prior knowledge of an employees's dangerous propensities," versus misconduct that is ". . .actually observed or readily observable. . .in the very presence of hospital employees." Accordingly, the Court held that ". . .observations and information known to or readily perceivable by hospital staff that there is a risk of harm. . .under the circumstances can be sufficient to trigger the duty to protect." In the instant matter, the Plaintiff has raised this latter possibility in arguing that the circumstances surrounding his assault were such that the hospital staff should have been prompted to act in a [*3]more protective manner towards him.
Therefore, on the basis of the foregoing, this court finds that while the Plaintiff has failed to raise sufficient issues of fact to defeat the Defendant's request for summary judgment on the basis of respondeat superior, it has succeeded in doing so on the issue of negligent supervision. WHEREFORE, Defendant's motion for summary judgment dismissal on the former ground is denied whereas on the latter, it is granted. This constitutes the decision and Order of this Court.
 JSC

Decision Date: December 24, 2003