[598 NYS2d 475]

SHANTE D., an Infant, by Her Mother and Natural Guardian, ADA D., et al., Appellants, v CITY OF NEW YORK et al., Respondents.

First Department, June 1, 1993

**APPEARANCES OF COUNSEL**

*Brian J. Isaac* of counsel, New York City *(Alan Chester*

*Salzman* with him on the brief; *Salzman, Ingber & Winer* and *Pollack, Pollack, Isaac & DeCicco,* attorneys), for appellants.

*Ellen B. Fishman* of counsel, New York City *(Leonard Koerner* with her on the brief; *O. Peter Sherwood, Corporation Counsel* of New York City, attorney), for respondents.

## OPINION OF THE COURT

SULLIVAN, J. P.

This appeal* is from an order setting aside a $350,000 verdict in plaintiff's favor and dismissing the complaint alleging, *inter alia,* negligence by the Board of Education in the supervision of its students based on an incident in which plaintiff, a third-grade student in Community School (CS) 30, at 144-176 East 128 Street in Manhattan, was forced by two other girls to participate in sexual activity in a school bathroom.

Plaintiff and Lisa R., older and bigger than plaintiff, having been left back for a year, were classmates in Ms. Campbell's class. According to plaintiff, on the day in question, March 17, 1986, Lisa had attempted to pull her out of the classroom when plaintiff got up from her desk to throw something away. Plaintiff, at Ms. Campbell's urging, came back into the classroom but Lisa did not. Just before the incident complained of, plaintiff raised her hand and asked for permission to go to the bathroom. Although there was a bathroom within the classroom, Ms. Campbell did not allow the students to use it during class and preferred that they use the bathroom in the hallway. Since there was only one pass, no more than one child at a time was allowed out of the classroom. After Ms. Campbell gave her approval, plaintiff took the pass and left the classroom. On her way to the bathroom she saw Earlene J., a student in another class, in the hallway. Later, she saw Earlene in the bathroom. According to plaintiff, when she entered the bathroom, Earlene and Lisa were inside and "they said—took my clothes off me, they took their own clothes off of themselves, they made me do things I didn't want to do." Plaintiff described how they touched her body and forced her to lick Lisa on the buttocks.

Plaintiff did not report the matter until the end of the day when she told her mother. She was taken to North General

---

* Without deciding whether we are required to take such action, we are designating the court file confidential. *(See,* Civil Rights Law § 50-b.)

Hospital, where an examination confirmed that she was not physically injured; she also spoke to a counselor. The matter was also reported to the police department, which, after a series of interviews, closed the case.

At trial, plaintiff's mother testified that she had made several complaints to Ms. Campbell about Lisa's conduct, specifically, her bullying of plaintiff. She remembered reporting an incident in which Lisa made her daughter eat cake that had fallen to the floor. Plaintiff's mother also testified that she told Ms. Campbell about an incident in which Lisa allegedly made another student, whom she named, undress and walk naked around the school. While Ms. Campbell could recall discussing plaintiff's report cards with her mother, she did not remember any complaints about Lisa's conduct.

A neuropsychiatrist to whom she had been referred by her attorney first saw plaintiff on February 26, 1988, almost two years after the incident, at a time when she was in foster care and no longer attended CS 30. She was seen also on two subsequent visits, September 20, 1989 and May 30, 1991, mainly for litigation purposes, although a certain amount of treatment was given. According to the psychiatrist, plaintiff gave a history of having been forced by two girls, *inter alia,* to "lick their private areas", after which the two girls "licked her private spots". The psychiatrist found that plaintiff manifested anxiety symptoms "and feelings of guilt and self-reproach and denial and fear" which, he believed, were a result of the incident. In his opinion, plaintiff had a permanent psychological disability, which he described as "an adjustment reaction, with anxiety and depressive features, secondary to the assault". He was of the view that plaintiff "will have emotional conflicts relating to her sexuality, her sexual feelings, that she will be inhibited sexually, that she will be defensive about other people and mistrusting of them, that she will tend to adopt a passive attitude in her relations with others, and that she can be subjected to further abusive relationships with men or women, based on this initial trauma." The neuropsychiatrist recommended that plaintiff undergo psychotherapy.

Pursuant to a regulation of the Chancellor, CS 30 had a safety plan which provided, *inter alia,* that children were to use the classroom bathrooms, where available; that teachers were to take their classes to the bathroom as a group, before and after the lunch period, and that children were never to be left unsupervised or sent to stand or sit in the hall. The school

had had a problem with intruders and established these rules in order to promote the safety of the children. If a classroom bathroom was occupied, the student was to be given a pass to use the bathroom outside the classroom. If the child did not return in 15 minutes, the teacher was to send two students of the same gender to check the bathroom. Only one child was to be permitted out of the classroom at any one time.

After a trial lasting one and one-half days, the case went to the jury against the Board of Education and plaintiff's teacher, Ms. Campbell. The mother's derivative action was not pursued. The court charged the jury that, absent proof of prior assaultive conduct or threats against other students in the school by either Lisa or Earlene and the reasonable foreseeability of injury in the circumstances, plaintiff could not recover. The jury returned a verdict in plaintiff's favor, finding both defendants negligent and awarding her $100,000 for past and $250,000 for future pain and suffering. On defendants' motion pursuant to CPLR 4404 (a) to set aside or reduce the verdict, the court dismissed the complaint, finding, as a matter of law, that, in the absence of evidence of violence at the school, and with no evidence, other than the cake-eating incident, of a prior incident between plaintiff and Lisa R., the element of foreseeability had not been proven. The court further found that the violation of the school's safety plan permitting only one child at a time to be out of the classroom could not be the basis of a finding of negligence since, according to the court, the rule was designed to protect the students from an assault by an intruder, not another student. We reverse and reinstate the verdict.

The test for determining whether the evidence is sufficient to sustain a verdict is a well known one. There must be "no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial." *(Cohen v Hallmark Cards,* 45 NY2d 493, 499; *see, e.g., Leyva v Levy,* 120 AD2d 444, *affd* 69 NY2d 847; *see also, Mirand v City of New York,* 190 AD2d 282.) "Rationality, then, is the touchstone for legal sufficiency". *(O'Boyle v Avis Rent-A-Car Sys.,* 78 AD2d 431, 439.)* Where any facts appear in the record reasonably to support the jury's determination, the verdict cannot be set aside on the ground of legal insufficiency. It is the court's responsibility to "make the threshold determination as to whether the plaintiff, by introducing adequate evidence on each element, has made out a case sufficient in law to support

a favorable jury verdict." *(Basso v Miller,* 40 NY2d 233, 242.) While it has frequently been noted that " 'insufficient evidence is, in the eye of the law, no evidence' " *(Matter of Case,* 214 NY 199, 203, quoting *Pollock v Pollock,* 71 NY 137, 153), what is literally meant is that there is " 'none that ought reasonably to satisfy a jury, that the fact sought to be proved is established' " *(Pollock v Pollock, supra,* at 153, quoting *Jewell v Poor,* 13 CB 916 [Maule, J.]).

The Board and Ms. Campbell argue that even when the trial evidence is viewed, as it must be, in a light most favorable to plaintiff, as the prevailing party *(see, Parkin v Cornell Univ.,* 78 NY2d 523, 526), there is insufficient proof of any breach by them of a duty causally related to plaintiff's injuries.

■ The existence of a legal duty is, of course, an essential element of any negligence claim. *(Pulka v Edelman,* 40 NY2d 781, 782.)* It is a plaintiff's obligation also to establish a breach of that duty and that the injuries claimed were proximately caused by the breach. *(See, Solomon v City of New York,* 66 NY2d 1026, 1027.)* In that regard, it is the well-settled law of this State that a school board, while not an insurer of their safety, has an unqualified and mandatory duty to supervise the activities of the students in its charge. *(Decker v Dundee Cent. School Dist.,* 4 NY2d 462, 464; *Cavello v Sherburne-Earlville Cent. School Dist.,* 110 AD2d 253, 255, *lv dismissed* 67 NY2d 601.)* The duty of the board to its students "stems from the fact of its physical custody over them." *(Pratt v Robinson,* 39 NY2d 554, 560.)* It will be held liable for any foreseeable injury proximately related to the absence of supervision. *(Mirand v City of New York,* 190 AD2d, *supra,* at 288.)* School boards generally have a duty to supervise their students with the same degree of care as a parent would exercise in the same circumstances. *(Lawes v Board of Educ.,* 16 NY2d 302.)* Thus, the task for us is to determine if, on this record, a jury question was presented as to whether defendants, the Board and Ms. Campbell, plaintiff's teacher, exercised the same degree of care in supervising plaintiff as would a reasonably prudent parent. We find that the record contains sufficient evidence to support the jury's finding that defendants breached their mandatory duty to provide such supervision.

As her evidence shows, plaintiff, in violation of the school's safety regulations and after an earlier unrelated incident in Ms. Campbell's presence, was sent out of the classroom, even though a bathroom in the classroom was available, at a time

when at least one other student was wandering the school premises unattended. That Ms. Campbell claimed that the incident occurred during recess does no more, of course, than raise an issue of fact. The jury was free, similarly, to reject Ms. Campbell's denial of any complaint by plaintiff's mother, admittedly addicted to crack cocaine at the time, as to Lisa's bullying of plaintiff and her concern for her safety. Nor is it significant that plaintiff was unwilling or unable to divulge to the jury the full extent of the abuse to which she was subjected. If anything, her hesitancy to discuss the matter in detail supports her claim that the event was a traumatic one. In any event, even without the neuropsychiatrist's testimony as to the history he recorded of the event, which was much more graphic than plaintiff's testimonial account, the assault and its residual effect was established.

■ Nor, on the issue of foreseeability, was it necessary, as defendants suggest, citing, e.g., *McLoughlin v Holy Cross High School* (135 AD2d 513 [complaint dismissed where proof insufficient to show school knew or should have known that student who assaulted the infant plaintiff had history of violent behavior which posed a threat to the safety of the other students or that the school should reasonably have foreseen that student, not a member of the plaintiff's class, would enter the classroom while the teacher was absent]), for plaintiff to show that Lisa had a history of acting out sexually or that she had previously committed the same type of assault as was here involved. It was enough that plaintiff show that Lisa had previously exhibited violent tendencies which should have placed the City on notice that she would, given the opportunity, assault plaintiff in the future. *(See, Mirand v City of New York,* 190 AD2d, *supra,* at 290.)* As this record discloses, plaintiff's mother complained to Ms. Campbell that Lisa was threatening to beat plaintiff. Certainly, there was evidence of a potential for harm, warranting some greater degree of supervision than was afforded.

Moreover, that Lisa and Earlene were permitted to wander unsupervised in the hallway, Lisa without even a pass, provides additional support, given the other circumstances, for a finding of negligence. This is not to suggest that the school's safety plan, such as it was, created any special duty on the part of defendants in favor of plaintiff. The plan appears to be no more than a compendium of rational rules which any prudent parent would implement. And, while the rules' genesis may have been in response to the intrusion of outsiders

into the school building, the rules were, by no means, limited in application to the protection of the students against assault by intruders. They were obviously intended to protect the students from danger, whatever the source, and represented an appropriate supervisory response to that danger.

■ Defendants' argument that the actions of Lisa and Earlene were an independent, intervening act which broke the chain of causation should be rejected. It is not necessary that the exact nature of the danger be foreseeable. All that need be shown is that "the general risk and character' of injuries are foreseeable." *(Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 317.) That standard has been met here.

■ Finally, defendants argue that even if the verdict on liability is reinstated a new trial on damages is in order because the award of damages was excessive. They failed, however, to present any countervailing evidence on the issue at trial. Given the traumatic nature of the experience and the uncontradicted psychiatric testimony that plaintiff sustained permanent and residual injury, we cannot say that the award is excessive.

Accordingly, the order of the Supreme Court, New York County (Edward H. Lehner, J.), entered on March 23, 1992, which granted defendants' motion to set aside the verdict and dismissed the complaint, should be reversed, on the law, without costs or disbursements, and the verdict reinstated.

KUPFERMAN, J. (dissenting). I would affirm for the reasons stated by Lehner, J., in his opinion setting aside the verdict and dismissing the complaint.

I would only add that neither the teacher nor the Board of Education, and perforce the City of New York, is an insurer against all dangers which arise due to irresponsible and callous actions by students in the school system.

There was here no unreasonable or uncaring action or failure to act or indifference by the teacher. Nor was there a history that should have prompted a reaction. *(Cf., Jacqueline S. v City of New York,* 81 NY2d 288.)

ROSENBERGER and WALLACH, JJ., concur with SULLIVAN, J. P.; KUPFERMAN, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered on March 23, 1992, reversed, on the law, without costs or disbursements, and the verdict reinstated.