OPINION OF THE COURT
Diane A. Lebedeff, J.
At the outset of what appears to be the first New York case falling into an emerging category of “Talk Show Torts,” the named defendants move to dismiss the complaint brought on behalf of Sheila C., a minor who appeared on the Maury Povich Show. Plaintiff alleges the defendants’ negligent acts connected with the show set in motion a chain of events which concluded with her rape. Plaintiff cross-moves for leave to amend, should the court find the complaint is inadequate.
Background
In 2001, the show solicited “out-of-control teen” guests. The plaintiff’s mother contacted the show. During conversations with plaintiffs mother and grandmother, the show’s staff was advised that plaintiff was 14 years old, undergoing counseling, and taking medication for emotional illness, as well as that she recently had attempted suicide, lost a close immediate family member, and reported sexual intercourse with one 29-year-old man and five boys who were under age 16.[1] It was agreed that the teen would appear on the show and that the show would provide the teen with follow-up psychological counseling and a *317 corrective “teen boot camp,” make transportation and hotel arrangements, and pay related expenses. After being told the teenager lived with her grandmother, the show asked that both plaintiffs mother and grandmother accompany the plaintiff on the trip. On December 5, 2001, plaintiff, her mother and her grandmother were picked up by a limousine in their hometown of Lemphill, Texas, flown to New York City, and transported by limousine to a midtown hotel.
On December 6, 2001, the day of the taping at the studio, defendant Polly Gorman and show staff allegedly told the teen to act sexually provocative and requested that plaintiff look “sexier” by wearing her thigh-length top without slacks. In accord with that theme, plaintiff claims her sexual experience was exaggerated fivefold during the show.
While plaintiff was watching the taping of other guests on the show with staff members, a man approached and exchanged greetings with show personnel. In their presence, he introduced himself to plaintiff as “Maury’s limo driver,” complimented plaintiffs looks and asked for contact information so that he could show her around town at night. When plaintiffs mother inquired about this exchange, an unidentified staff member told the mother not to worry because the staff had “everything under control.”
Later that evening, the driver called upon plaintiff at the hotel. After being turned away by plaintiff’s mother and grandmother, he persuaded plaintiff to sneak away. The complaint alleges that the driver drove plaintiff up in a limousine to a dark area, climbed in back with her, and raped her.
Based on the factual allegations summarized above, the complaint asserts causes of action for negligence, negligent infliction of emotional distress, slander, negligent hiring and retention, and negligence per se. The moving defendants seek dismissal of all claims.
When considering a motion to dismiss, it is well settled that “the sole criterion is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissed will fail” (Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]). The factual allegations of the complaint Eire to be taken as true, emd the complaint must be interpreted in a fair and reasonable manner (see, e.g., Williams v Williams, 23 NY2d 592 [1969]; Tobin v Grossman, 24 NY2d 609, 612 [1969]; Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409 [2001]).
*318 Negligence and the Duty of Care
Movants urge they owed no duty of care to the plaintiff at the time of the alleged rape and that all negligence claims must fall. The issue of the “existence and scope of a duty of care is a question of law” (Church v Callanan Indus., 99 NY2d 104, 110-111 [2002]) to be approached with recognition that “[n]egligence is not a stereotyped thing, but, as courts have wisely said, it is a matter of time, place and circumstance; and the same act of a defendant may be a breach of duty toward one person while not a breach of duty toward another” (Levine v City of New York, 309 NY 88, 92-93 [1955]).
The defendants’ argument has its seeds in Graves v Warner Bros. (253 Mich App 486, 656 NW2d 195 [2002], lv denied — Mich —, 666 NW2d 665 [2003], reconsideration denied — Mich —, 669 NW2d 552 [2003] [the Jenny Jones case]), which held that the Jenny Jones Show owed no duty to a former show guest who was murdered by another person who participated in the same taping session. The murder occurred several days after the show and after both guests returned to their homes in another state. The appellate court emphasized the distance of time and place, concluded that “under the circumstances defendants owed no legally cognizable duty to protect plaintiffs’ decedent from the homicidal acts of a third party” and vacated the $29 million jury verdict (253 Mich App at 488, 656 NW2d at 197). The court applied tort rules governing commercial premises where the owners and operators have a duty to use reasonable care which “is triggered by specific acts occurring on the premises that pose a risk of imminent and foreseeable harm to an identifiable invitee” (253 Mich App at 495-496, 656 NW2d at 201 [emphasis removed]), and ruled that the relationships between the talk show and its guests were “of business invitor to invitee” and that “any duty ends when the relationship ends” (253 Mich App at 498, 656 NW2d at 202).[2]
The facts pleaded by the instant complaint are distinctly different from the Jenny Jones case. The complaint describes an *319 active relationship between the show and the plaintiff at the time of the claimed rape, in that the plaintiff was subject to the show’s travel, care and chaperone arrangements at the very time of the assault. Further, the show is described as having a continuing bargained-for future obligation to provide plaintiff with counseling, to send her to a remedial camp, and to return her to her home state (see, for a description of psychological screening and aftercare provided by television talk shows, Jason S. Schlessel, The Deep Pocket Dilemma: Setting the Parameters of Talk Show Liability, 20 Cardozo Arts & Ent LJ 461, 481-483 [2002]). A fair summary of the complaint’s allegations, and its inferences, is as follows: (1) for the show’s commercial purposes and as a result of the show’s solicitation and selection, an “out-of-control” minor with disclosed emotional difficulties was brought into this state; (2) the show presented itself as having special expertise in remedying the problems of an “out-of-control” teen, with the capability of choosing and providing an appropriate remedial therapist and camp program; (3) while the child was under the show’s direct supervision, the show’s staff allowed a person allegedly known to them to approach the minor and successfully learn how to contact the minor, notwithstanding that there was no facially proper purpose for such a contact; (4) after being taped — and it is unclear that all taping was fully completed — the minor was left under the supervision of the two adults who admitted they could not control the minor and who had asked the show to help them correct this problem; and (5) no other steps having been taken to protect the infant, to assist the guardians, or to prevent the driver from pursuing his desire to contact the minor, the child was lured away from the guardians by the driver and was raped. Clearly, the pleading states a fact pattern very different from the Jenny Jones case.
As to the law, also unlike the Jenny Jones case, no great legal scrutiny is required to identify a legally cognizable duty which underlies the negligence claim. The pleading asserts negligent supervision of a child, a claim well recognized in New York. A nonparent may be held responsible for negligent supervision of a child when the nonparent undertakes the care and supervision of a child, the child is injured, and such injuries foreseeably are related to the absence of adequate supervision *320 (see Mirand v City of New York, 84 NY2d 44 [1994]; Shante D. v City of New York, 83 NY2d 948 [1994]). As a matter of law, a high standard of care is imposed upon the supervisor of a minor and no lower standard of care may be utilized, such as the invitee standard used in the Jenny Jones case (Zalak v Carroll, 15 NY2d 753, 754 [1965] [duty to infant in defendants’ care “not measured by what their duty would have been to a social guest or a mere licensee” and caretakers “were required to use reasonable care to protect the infant plaintiff from injury”]; Willis v Young Men’s Christian Assn, of Amsterdam, 28 NY2d 375, 379 [1971] [“(A)lthough persons having children entrusted to their care are ‘not the absolute insurers’ of their safety, they are ‘charged with the highest degree of care’ ”]).
Further, although movants request consideration of a number of other factors, none defeat the pleaded cause of action. First, the fact that the talk show’s personnel were not directly supervising the minor at the time of the injury is not fatal to the pleading. A caretaker is not automatically exempt from responsibility merely because of a suspension of physical supervision of an injured minor where, as here, the conditions created by the caretaker are still in effect (Ernest v Red Creek Cent. School Disk, 93 NY2d 664, 671 [1999] [school district may be responsible for injury after child released from custody when student was “released into a potentially hazardous situation” and hazard was partially of defendants’ “own making”]). Once a claim of lack of adequate supervision is pleaded, it must be left to a later date to weigh whether the facts are such that the duty to supervise no longer lay with defendants (compare Berlin v Nassau County Council, Boy Scouts of Am., 229 AD2d 414 [2d Dept 1996] [summary judgment determination dismissing claim against trip supervisor for permitting slingshot purchase on trip when injury was one week after child returned home]).
Second, describing a rape as an unanticipated voluntary act offers no safe harbor defeating the pleading. The proper inquiry here is whether the complaint claims that deficient supervision was a substantial contributing factor to injury to a minor by the harmful action of a third party, outside the presence of the supervisor, in a setting arising from the supervisor’s failure to anticipate an obvious, inherent danger (Bell v Board of Educ. of City of N.Y., 90 NY2d 944, 947 [1997] [student separated from supervised class trip, rape held reasonably foreseeable consequence of earlier inadequate supervision, Court noting “the very purpose of the . . . supervision was to shield (a) vulnerable *321 schoolchild() from such acts”]; Kush v City of Buffalo, 59 NY2d
26, 33 [1983] [minors injured by dangerous chemicals stolen from playground premises, “the intervening, intentional act of another is itself the foreseeable harm that shapes the duty”]). The pleading clearly meets this standard, for this contention is the very essence of the claim raised by plaintiffs.[3]
Third, defendants’ contention that the involvement of the plaintiffs mother and grandmother insulates them from liability is unavailing. Even assuming arguendo that the mother and grandmother bore some responsibility to supervise the plaintiff in the hotel, any contributory negligence on their part cannot, as a matter of law, defeat or impair a minor’s claim (General Obligations Law § 3-111 [“In an action brought by an infant to recover damages for personal injury the contributory negligence of the infant’s parent or other custodian shall not be imputed to the infant”]; Holodook v Spencer, 36 NY2d 35, 49 [1974] [statute indicates “that the parent’s failure to provide adequate supervision ... (is not) permitted to diminish or bar a child’s recovery against a third party”]).
Finally, it is not fatal to the claim that plaintiff was a teenager. All caretakers of minors have a duty of care, even if the minor is a teenager (Mary A. ZZ. v Blasen, 284 AD2d 773, 775 [3d Dept 2001] [neighbor agreed to “keep an eye” on teenage girls, one of whom was sexually assaulted, and was “required to use reasonable care to protect the child from harm and may be li *322 able for injury proximately caused by . . . negligence”]). Whether the teenage plaintiff herself was contributorily negligent cannot be weighed on a motion to dismiss and likely not even on a motion for summary judgment (Carmen P. v PS&S Realty Corp., 259 AD2d 386, 388 [1st Dept 1999] [in relation to 14 year old, “Whether a child has exercised reasonable care for a person of her maturity and developmental level is typically a jury question”]; Adolph E. v Lori M., 166 AD2d 906, 907 [4th Dept 1990] [“whether defendant, then 12 years of age, was negligent presents issues of fact which cannot be resolved on a motion for summary judgment”]).
Based upon the foregoing, it is determined that plaintiff has adequately pleaded a cause of action for negligence.
Emotional Distress
The emotional distress cause of action sets forth in its text mixed claims of both intentional and negligent infliction of emotional distress. An intentional infliction of emotional distress claim must rest upon allegations that a defendant’s behavior was “extreme and outrageous” to such extent that the action was “atrocious and intolerable in a civilized society” (Freihofer v Hearst Corp., 65 NY2d 135, 143 [1985]; Murphy v American Home Prods. Corp., 58 NY2d 293, 303 [1983]; Howell v New York Post Co., 81 NY2d 115 [1993]). The same legal standard is generally applicable to negligent infliction of emotional distress (Longo v Armor El. Co., 307 AD2d 848, 850 [1st Dept 2003] [plaintiffs must “establish the element of extreme and outrageous conduct for a negligent infliction of emotional distress claim [by] . . . evidence that the . . . defendants’ conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency”]).
Alternatively, a negligent infliction of emotional distress claim may rest upon an assertion that “defendants’ conduct unreasonably endangered plaintiffs’ physical safety” or, albeit irrelevant here, “that untruthful information regarding death was transmitted or that a corpse was negligently mishandled” (Dobisky v Rand, 248 AD2d 903, 905 [3d Dept 1998], summarizing Johnson v State of New York, 37 NY2d 378, 381-382 [1975]). Where endangerment of physical safety is pleaded, the physical danger supporting a negligent infliction of emotional distress claim involves direct and immediate jeopardy, not a danger later arising as a consequence of a defendant’s action (see, as to fear for self, Peters v Rome City School Dist., 298 AD2d 864, 866 [4th *323 Dept 2002] [child’s conditions of confinement supported finding safety was endangered or fear for safety existed]; see, as to fear for another, DeAguiar v County of Suffolk, 289 AD2d 280, 281 [2d Dept 2001] [plaintiff, 50 to 60 yards away from a relative’s motorcycle accident was “not under an unreasonable risk of bodily harm”]; and see, for the zone-of-danger rule, Bovsun v Sanperi, 61 NY2d 219, 228 [1984]).
Neither alternate basis for a negligent infliction of emotional distress claim applies here. Also undermining the negligent emotional distress claim is the fact that the same actions are pleaded as supporting the negligence claim discussed above (see McIntyre v Manhattan Ford, Lincoln-Mercury, 256 AD2d 269, 270 [1st Dept 1998], appeal dismissed 93 NY2d 919 [1999] [emotional distress claim is “a last resort” and “(p)recluded where the offending conduct is embraced by a traditional tort remedy”]).
No other standard being applicable, the pivotal factor upon which the emotional distress claim must rest is the conduct of the defendants as pleaded. No movant is the alleged rapist. These movants are described as participants in various aspects of production of a television show, and no language in the pleading identifies any of the actions of an individual movant as “intolerable in a civilized society.”
Given that the actions attributed to each movant fail to meet the requisite standard, this claim against each movant is severed and stricken.
Slander
Defendants also seek dismissal of the slander per se claim, on the ground that the complaint fails to allege the exact defamatory words, the speaker, and the time and place of the allegedly defamatory statements and the pleading fails to meet the particularity requirements of CPLR 3016 (a) (see Dillon v City of New York, 261 AD2d 34, 41 [1st Dept 1999]; American Preferred Prescription v Health Mgt, 252 AD2d 414, 420 [1st Dept 1998]).
Movants rightly argue that the pleading must set forth the exact words used, which also is necessary so that the court may perform a threshold review to determine if the exaggerating words are defamatory or, alternatively, are “rhetorical hyperbole” that “cannot ‘reasonably [be] interpreted as stating actual facts’ about an individual” (Milkovich v Lorain Journal Co., 497 US 1, 20 [1990], citing Hustler Mag. v Falwell, 485 US 46, *324 50 [1988]). Such a review must be undertaken carefully when a claimed defamatory statement is made in the course of a public discussion, where both parties may use “non-literal, figurative language in expressing their views” (Horsley v Rivera, 292 F3d 695, 702 [11th Cir 2002] [suit dismissed against talk show host Geraldo Rivera arising out of his exchange with antiabortion activist]). Further, in the context present here, an exact quotation is required to identify whether a statement made in relation to a talk show was aired to the general public (Scalamandre & Sons v Kaufman, 113 F3d 556, 563 [5th Cir 1997] [“It is common knowledge television programs . . . shoot more footage than necessary and edit the tape they collect down to a brief piece”]; see, for a description of editing process for a television show, Texas Beef Group v Winfrey, 201 F3d 680, 689 [5th Cir 2000], reh en banc denied 212 F3d 597 [5th Cir 2000] [suit against Oprah Winfrey Show involving product disparagement claims of the Texas cattle industry]).
Because the offending words are not set forth in the complaint, the slander claim is dismissed with leave to replead, if plaintiff be so advised (Avant Graphics v United Reprographics, 252 AD2d 462, 463 [1st Dept 1998]).
Negligent Hiring and Retention
A cause of action for negligent hiring or retention requires allegations that the employer “knew or should have known of the employee’s propensity to commit injury,” or the employer failed to investigate a prospective employee notwithstanding knowledge of “facts that would lead a reasonably prudent person to investigate that prospective employee” (T.W.v City of New York, 286 AD2d 243, 245 [1st Dept 2001]; see, as to elements, K.I. v New York City Bd. of Educ., 256 AD2d 189 [1st Dept 1998], and Yeboah v Snapple, Inc., 286 AD2d 204 [1st Dept 2001]; see also, addressing verdict after trial, Detone v Bullit Courier Serv., 140 AD2d 278 [1st Dept 1988], lv denied 73 NY2d 702 [1988]). The complaint contains the necessary allegations.
Negligent hiring and retention concepts do have sufficient flexibility to cover relationships which are not those of a typical employer-employee arrangement, especially where a named defendant is alleged to have selected or controlled persons placed in contact with minors (see K.I. v New York City Bd. of Educ., supra, 256 AD2d at 191 [school volunteer screened by teachers and principal, claim dismissed only upon proof defeating substantive claim]). It is not ignored that the role and status of *325 each moving defendant — and, indeed, of the alleged limousine driver and rapist — within the show’s organization and structure must be clarified in the course of discovery. These relevant facts are necessarily “within defendants’ exclusive knowledge” and “it would be premature to grant dismissal” for a failure to plead full supporting facts at this early stage of the proceeding (Parsons & Whittemore v Abady Luttati Kaiser Saurborn & Mair, 309 AD2d 665 [1st Dept 2003]). Accordingly, the requests to dismiss this branch of the pleading are denied.
Negligence Per Se (Child Endangerment Statute)
The negligence per se claim is based on allegations that the conduct of several of the defendants violated Penal Law § 260.10 (1). The statute states a “person is guilty of endangering the welfare of a child when . . . [such person] knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his life or health . . . .”
Negligence per se, also termed “absolute liability” and “liability without fault,” is limited to claims based upon a “violation of a State statute that imposes a specific duty” (Elliott v City of New York, 95 NY2d 730, 734 [2001]; Schmidt v Merchants Despatch Transp. Co., 270 NY 287, 304 [1936] [“a new duty or a standard of care different from that required by custom and common law”]; Juarez v Wavecrest Mgt. Team, 88 NY2d 628, 645 [1996] [such duty must impose more than “a standard of reasonableness”]; see also 79 NY Jur 2d, Negligence § 73 [“Statutes imposing civil liability for violation”]). If a statute gives rise to negligence per se and the breach contributes to an injury (Van Gaasbeck v Webatuck Cent. School Dist. No. 1 of Towns of Amenia, N.E., Stamford & Washington, 21 NY2d 239, 246 [1967]), violation of that statute is “Conclusive evidence of negligence [and] calls for a directed verdict” of liability (Joyce v Rumsey Realty Corp., 17 NY2d 118, 122 [1966]).
In relation to the mandate of Penal Law § 260.10 (1) that adults refrain from acting in “a manner likely to be injurious to the physical, mental or moral welfare of a child,” it has been observed that “[t]he statute is broadly written” and it “does not require a particular outcome or actions aimed at a specific individual” but only that the defendant have “an awareness of the potential for harm” to a child (People v Johnson, 95 NY2d 368, 372 [2000]; see, similarly, People v Hitchcock, 98 NY2d 586, *326 590 [2002]). This duty is clearly general, and harkens to custom and reasonableness.
Indeed, there is no independent support for plaintiffs’ argument that the statute gives rise to negligence per se. No New York case has interpreted this particular statutory language as giving rise to negligence without fault. In the one jurisdiction where this argument was also raised, absolute liability was held to be unsupported by similar language (Hite v Brown, 100 Ohio App 3d 606, 612, 654 NE2d 452, 456 [Ct App, 8th Dist 1995], appeal denied 73 Ohio St 3d 1414, 651 NE2d 1311 [1995] [negligence per se inapplicable because “statute requires one to employ reasonable conduct under the circumstances, it does not describe a specific act but instead states a rule of conduct”]; see also LaFreniere v Burns, 30 Conn L Rptr 5 [Super Ct 2001] [application of endangerment statute unwarranted on facts]). Nationwide, similar broadly worded child endangerment provisions are the basis for criminal and custody termination disputes, and they are almost never invoked in a negligence context (see, collecting cases, Jeanne A. Fugate, Who’s Failing Whom? A Critical Look at Failure-to-Protect Laws, 76 NYU L Rev 272, 277 n 19 [2001]).
It is helpful to contrast provisions in relation to which negligence per se does arise. Typically involved is a “flat and unvarying duty,” (Koenig v Patrick Constr. Corp., 298 NY 313, 318 [1948]) such as is found in worker protection provisions of the Labor Law, which involve “a hazard of definable orbit” (id. at 317). Strikingly, because of the confined nature of the duty, the second branch of the child endangerment statute — the bar of employment of a minor in an “occupation involving a substantial risk of danger” — and kindred statutes limiting employment of a minor at dangerous tasks have been held to support absolute liability (see Stenson v Flick Constr. Co., 146 App Div 66 [1st Dept 1911], appeal dismissed 203 NY 553 [1911] [case brought under child endangerment provision, plaintiff required to establish employer knew child was a minor to claim negligence per se]; Karpeles v Heine, 227 NY 74 [1919] [collecting cases, statutory prohibition against minor operating freight elevator]).
Based on the above, the court determines that the statutory duty to refrain from acting in a manner “likely to be injurious to the physical, mental or moral welfare” of a minor child does not give rise to a negligence per se claim. Accordingly, this claim is severed and dismissed as to each moving defendant.
*327 Other Requests
Movants also present heavily redacted contracts as documentary evidence indicating that individual defendants Kemmer and Gorman were employed by or were independent contractors of Studio USA Talk Television and they urge the claims against Mr. Povich and the other corporate defendants should fall on that basis. When a motion to dismiss is based upon documentary evidence, “[dismissal under CPLR 3211 (a) (1) is warranted ‘only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law’ ” (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002], quoting Leon v Martinez, 84 NY2d 83, 88 [1994]). The proffered contracts shed no light on the actual degree of control any defendant had over any other defendant, and they reveal no information on the relationship of Studio USA Talk Television to Mr. Povich or the other corporate defendants. Accordingly, these documents are inadequate to support dismissal of the complaint as requested.
Plaintiffs cross motion for leave to amend is denied except as to the slander claim. The balance of plaintiffs request is not supported by a proposed amended pleading nor by evidentiary supporting material (Abbott v Herzfeld & Rubin, 202 AD2d 351 [1st Dept 1994], lv dismissed and denied 83 NY2d 995 [1994]).

. An act of sexual intercourse with a minor 14 years old or less is classified as statutory rape in Texas (Texas Penal Code § 22.011). The plaintiffs behavior is consistent with that of a victim of predatory or abusive sexual relationships, who often displays promiscuity, depression, self-harm and susceptibility to revictimization (Michelle Oberman, Regulating Consensual Sex with Minors: Defining a Role for Statutory Rape, 48 Buff L Rev 703, 729-730 [2000]). The same author commented that, by discounting the importance of the statutory age limits, “modern criminal law has turned girls from ‘jail bait’ into ‘fair game’ without considering the nature and meaning of consensual sexual activity” (Michelle Oberman, Turning Girls into Women: Re-evaluating Modern Statutory Rape Law, 85 J Grim L & Criminology 15, 21-22 [1994]).

. The Jenny Jones verdict was subject to considerable academic comment (see Richard M. Goehler and Jill Meyer Vollman, Expansion of Tort Law at the Expense of the First Amendment: Has the Jones Court Gone Too Far ? Stay Tuned to Find Out., 27 N Ky L Rev 112 [2000] [written prior to the appellate reversal and containing a review of the jury instructions given]; Robin Famoso, Ambush TV: Holding Talk Shows Liable for the Public Disclosure of Private Facts, 29 Rutgers LJ 579 [1998]; see, for a review of cases against media defendants whose works were claimed to have led to injury, John Charles Kunich, Natural Born Copycat Killers and the Law of Shock Torts, 78 *319 Wash U LQ 1157 [2000]; Clay Calvert, Media Bashing at the Turn of the Century: The Threat to Free Speech After Columbine High and Jenny Jones, 2000 L Rev Mich St U Det CL 151 [2000], and Clay Calvert, Media Liability For Violent Conduct: One Year Later, 23 Loy LA Ent L Rev 247 [2003]).

. Resting on the same assertion that the injury was inflicted by a third party, defendants raise unavailing objections concerning proximate cause and notice. As to proximate cause, it is established that proximate cause raises an issue of fact not appropriate to a preanswer motion (Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315 [1980] [“whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant’s negligence . . . (is) for the fact finder to resolve”]).
As to the contention notice must be pleaded, this argument is unsuited to this pleading, which asserts that the mother voiced her concern over the exchange between her daughter and the eventual rapist (see Shante D. v City of New York, 83 NY2d 948, supra [1994], affg 190 AD2d 356, 361-362 [1st Dept 1993] [mother complained to teacher about perpetrator of sexual assault prior to incident]). In any event, case law does not appear to require pleading notice of a risk posed by an assailant where general deficient supervision of a minor is claimed (Coon v Board of Educ. of City of N.Y., 160 AD2d 403 [1st Dept 1990] [student trampled in a school stairway, “(w)here duty to supervise is mandatory, notice is not an issue” for the “general duty to supervise (is not) dependent on notice”]; Garcia v City of New York, 222 AD2d 192 [1st Dept 1996] [five year old sexually assaulted after being sent alone to a school’s public bathroom, notice not required]; see also Murray v Research Found, of State Univ. of N.Y., 184 Misc 2d 453, 459 [Sup Ct, Monroe County 2000]).