■ T. W. et al., Appellants, v City of New York et al., Defendants, and Police Athletic League, Inc., Respondent. [729 NYS2d 96] —Order, Supreme Court, Bronx County (Alan Saks, J.), entered January 21, 2000, granting the motion for summary judgment of defendant Police Athletic League, Inc. (PAL), dismissing plaintiffs' complaint, unanimously modified, on the law, to deny the motion as to the causes of action for negligent hiring and retention, and negligent supervision of the children at the Center, and otherwise affirmed, without costs.

This personal injury action arises out of the sexual assault on the infant plaintiff by defendant Anthony Monroe, an employee of defendant Police Athletic League who worked as a custodian at the PAL Webster Avenue Community Center

(Center) in the Bronx. PAL is a not-for-profit youth organization which provides recreational and educational programs for individuals between the ages of six and 21. Infant plaintiff was a member of an after-school program for girls between the ages of 10 and 13. The Center is owned by defendants City of New York and the Board of Education.

Monroe began working at the Center in or around December 1994. George Goodmon, then site director at the Center, learned of Monroe through Monroe's brother, who worked at an "at-risk youth" program at the Center. Goodmon interviewed Monroe, who admitted that he had a criminal conviction. Although at his deposition Goodmon could not recall what Monroe had been convicted of, he did remember that it was not a sexual offense. After the interview, Goodmon had the impression that Monroe "would be a good, hard worker," and told this to Linda Ortiz, his site supervisor, who eventually decided to hire Monroe. PAL did not investigate Monroe's criminal background, and it is not PAL's policy to make criminal background checks on employees at the Center. Monroe has an extensive history of criminal conduct dating back to 1977, including armed robbery, assault, theft, burglary, and possession of a controlled substance.

During the approximate two-year period between his hiring and the incident, PAL had no problems with Monroe. There were no complaints from parents, teachers, or the children. According to Goodmon, the staff, parents and people in the community thought well of Monroe. Goodmon thought Monroe was an "outstanding" worker. About a year and a half after he was hired, Monroe received a positive performance evaluation.

On January 24, 1997, however, Monroe stood at one of the entrances of the Center's gym and called out for infant plaintiff to come over. Although she was sitting by herself, there were other boys and girls in the gym. Monroe led her to a weight room in the basement where the sexual assault took place. Goodmon came upon the assault while making rounds of the Center. Monroe pleaded guilty to attempted sexual abuse in the first degree and was sentenced, as a predicate felon, to State prison.

The mother and natural guardian commenced this action on behalf of infant plaintiff and individually, seeking damages from PAL on the basis of respondeat superior, negligent hiring, retention, and supervision of Monroe, and negligent supervision of the children at the Center. In opposition to PAL's motion for summary judgment, plaintiffs submitted the affidavit of Mark Eisenberg, a professional security consultant, who

opined that PAL was negligent in hiring and retaining Monroe as a custodian in the Center. Eisenberg's conclusion was based on PAL's failure to investigate Monroe's background, failure to supervise Monroe in the performance of his job, and failure to employ any type of security guard or personnel. The IAS court granted PAL's motion for summary judgment dismissing the complaint and all cross claims against it.

On appeal, the plaintiffs do not dispute that the court was correct in dismissing the respondeat superior claim (*see, N. X. v Cabrini Med. Ctr.*, 280 AD2d 34). In addition, plaintiffs do not pursue the claim for negligent supervision of Monroe. Plaintiffs argue, however, that the evidence presented raised issues of fact as to whether PAL was negligent in hiring and retaining Monroe, and whether PAL was negligent in supervising the children at the Center, including plaintiff. We agree.

An employer may be liable for the negligent hiring and retention of an employee when it knew or should have known of the employee's propensity to commit injury. Moreover, an employer has a duty to investigate a prospective employee when it knows of facts that would lead a reasonably prudent person to investigate that prospective employee (*see, Kenneth R. v Roman Catholic Diocese*, 229 AD2d 159, *lv dismissed* 91 NY2d 848, *cert denied* 522 US 967; *Haddock v City of New York*, 140 AD2d 91, 94, *affd* 75 NY2d 478). Here, a jury could reasonably conclude that PAL had a duty to conduct an investigation of Monroe's background given its actual knowledge that he had a conviction, and that he would be working as a custodian in a place crowded with children, despite PAL's contention that Monroe had been recommended by his brother, a PAL employee, and that Goodmon had concluded that Monroe would be a good worker. This does not eliminate the issue of whether PAL had a duty to investigate Monroe's background.

Had PAL conducted an investigation, it would have learned of Monroe's extensive criminal record, which includes crimes involving violence, such as assault and attempted robbery (*compare, K.I. v New York City Bd. of Educ.*, 256 AD2d 189, 191-192 [where plaintiff "point(ed) to nothing which would have been revealed by checking (the employee's) criminal history"]; *see also, Rodriguez v United Transp. Co.*, 246 AD2d 178; *Amendolara v Macy's N. Y.*, 19 AD2d 702). PAL's argument that a background check would have revealed a propensity for violence, but not a propensity for sexual violence, is not dispositive, since it cannot be said that, as a matter of law, it is unforeseeable that a person with convictions for assault would commit a sexual assault when placed in a setting such as this

Center. Correction Law §§ 752 and 753, prohibiting employment discrimination of ex-convicts, does not change this result. It explicitly provides that discrimination is permissible where "the granting of the employment would involve an unreasonable risk * * * to the safety or welfare of specific individuals" (§ 752 [2]), and enumerates factors an employer may consider (*see*, *Haddock v New York*, *supra*). Given PAL's failure to investigate Monroe's background and consider the factors set forth in Correction Law § 753, a jury could reasonably conclude that PAL was responsible for the injury to infant plaintiff.

*Ford v Gildin* (200 AD2d 224), relied upon by the IAS court and PAL, is distinguishable. In *Ford*, this Court found that even if defendants were negligent in hiring a porter with a manslaughter conviction who sexually abused the infant plaintiff, negligence could not have been found to be the proximate cause of the abuse, which occurred 27 years after the porter's conviction and 18 years after he was hired. In addition, the abuse arose from the circumstance that the porter resided in the building, which provided a setting for his friendship with the infant's mother, his designation as the infant's godfather, and his unsupervised visits with the infant. Here, Monroe's access to infant plaintiff arose solely from his employment at PAL. Moreover, the assault in this case occurred about seven years after Monroe's last conviction and about two years from the time he was hired, which does not, as a matter of law, break the causal nexus between the hiring and the assault.

Finally, the affidavit of plaintiffs' expert, uncontroverted by another expert, was sufficient to raise an issue of fact as to whether PAL provided adequate supervision of the children at the Center. Concur—Rosenberger, J. P., Tom, Mazzarelli, Wallach and Friedman, JJ.