■ SANDRA M. et al., Appellants, v ST. LUKE'S ROOSEVELT HOSPITAL CENTER, Respondent, et al., Defendants. [823 NYS2d 463]—

In an action to recover damages for personal injuries, etc., the plaintiffs appeal (1), as limited by their brief, from so much of an order of the Supreme Court, Kings County (Dabiri, J.), dated June 18, 2004, as granted the motion of the defendant St. Luke's Roosevelt Hospital Center for summary judgment dismissing the complaint insofar as asserted against it, and (2) from a judgment of the same court entered August 12, 2004, which, upon the order, dismissed the complaint insofar as asserted against the defendant St. Luke's Roosevelt Hospital Center.

Ordered that the appeal from the order is dismissed, without costs or disbursements; and it is further,

Ordered that the judgment is affirmed, without costs or disbursements.

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of the judgment in the action (*see Matter of Aho,* 39 NY2d 241, 248 [1976]). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (*see* CPLR 5501 [a] [1]).

On July 20, 2001, the plaintiff Sandra M. was admitted to the defendant St. Luke's Roosevelt Hospital Center (hereinafter the Hospital) after attempting to commit suicide by taking an overdose of medication. The Hospital placed Sandra M. on suicide watch, which entailed constant, one-on-one observation by a nursing assistant. On the night of July 22, 2001, the defendant Ricardo Cortez, who had been placed with the Hospital by the defendant United Staffing System, Inc. (hereinafter United), a temporary employment agency, was the nursing assistant assigned to watch Sandra M. During his shift, Cortez allegedly sexually assaulted Sandra M.

The "Temporary Placement Agreement" between the Hospital and United provided that the personnel referred to the Hospital by United "are employees solely of [United]," and that United was responsible for screening those employees for "required education, experience, license, and certification." The agreement further provided that "the referral of an individual for duties at [the Hospital] shall be deemed [United's] warranty that such individual is appropriately certified, or licensed, as the case may be, and has been determined competent to perform the duties for which he/she is being supplied to [the Hospital]." The Hospital had "sole discretion as to whether or not to accept referred personnel for a designated position."

Sandra M. and her husband commenced this personal injury action against the Hospital, United, and Cortez. The complaint did not articulate any particular cause of action, but alleged that the Hospital was negligent in essentially two ways. First, its "written policies and procedures governing the staffing and operation of its suicide watch" were "inadequate as drafted to protect medicated and vulnerable patients from reasonably foreseeable risks of harm." Second, it "failed to independently evaluate the background, training, orientation and ability of the staff provided by United, and, instead, simply accepted such personnel without making an independent good faith judgment that such personnel were competent and suitable and would not engage in conduct harmful to vulnerable, medicated patients." The Supreme Court granted the Hospital's motion for summary judgment dismissing the complaint insofar as asserted against it. We affirm.

An employer is not liable under the doctrine of respondeat superior for torts committed by an employee for purely personal reasons unrelated to the furtherance of the employer's business (*see Judith M. v Sisters of Charity Hosp.,* 93 NY2d 932, 933 [1999]; *Mataxas v North Shore Univ. Hosp.,* 211 AD2d 762 [1995]). Since the plaintiffs do not allege that Cortez negligently performed his job, by, for example, failing to keep Sandra M. constantly within his sight, or that his alleged sexual misconduct was somehow related to the furtherance of the Hospital's business, the Hospital cannot be held vicariously responsible for Cortez's actions.

Furthermore, as a general rule, a principal is not liable for the wrongful acts of an independent contractor it retains (*see Kleeman v Rheingold,* 81 NY2d 270, 273 [1993]). The courts, however, have recognized numerous exceptions to the general rule (*see Feliberty v Damon,* 72 NY2d 112, 118 [1988]). For example, in *Mduba v Benedictine Hosp.* (52 AD2d 450, 453 [1976]), the court held that a hospital could be vicariously liable for the negligence of an emergency room doctor, even if he was an independent contractor, since "the decedent entered the hospital for hospital treatment," the hospital held itself out as a provider of hospital services, and patients were entitled to assume that the doctors who treated them were doing so on behalf of the hospital (*Mduba v Benedictine Hosp., supra* at 453). Similarly, in *Kleeman v Rheingold (supra),* the Court of Appeals held that the defendant law firm could be held liable for the failure of the process serving company with which it contracted to properly serve papers, resulting in the dismissal of a client's action. The Court reasoned that the duty to properly serve pro-

cess was so integral to the practice of law as to be nondelegable, and that the law firm therefore could not avoid liability for the breach of that duty by "farming out" the task to an independent contractor (*Kleeman v Rheingold, supra* at 275).

Like any other property owner, a hospital has a duty to protect persons lawfully present on its premises from the reasonably foreseeable criminal or tortious acts of third persons (*see Miller v State of New York,* 62 NY2d 506, 513-514 [1984]; *Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, 518-519 [1980]). A hospital also has a special duty "to safeguard the welfare of its patients, even from harm inflicted by third persons, measured by the capacity of the patient to provide for his or her own safety" (*N.X. v Cabrini Med. Ctr.,* 97 NY2d 247, 252 [2002]). Both theories of liability require a showing that the wrongdoer's conduct was foreseeable to the defendant (*see N.X. v Cabrini Med. Ctr., supra* at 253; *Nallan v Helmsley-Spear, supra* at 519). A hospital's duty to protect patients and visitors does not arise from the hospital's status as an employer, and a hospital acting in its capacity as caretaker is not necessarily responsible for knowing or foreseeing matters that an employer could be expected to know or foresee. For example, in *Kirkman v Astoria Gen. Hosp.* (204 AD2d 401 [1994]), the plaintiff was raped by a security guard employed by Burns International Security Services (hereinafter Burns), who was on duty at a hospital where the plaintiff had been visiting a patient. This Court determined that the hospital could not be held liable, as a possessor of realty, for a breach of the duty to protect the visitor from the reasonably foreseeable criminal acts of third persons, since there was "no evidence in the record that [the hospital] had any knowledge of, or contact with, the [Burns] employee that would have made the employee's criminal act foreseeable to the hospital" (*Kirkman v Astoria Gen. Hosp., supra* at 402).

A cause of action for negligent hiring, by contrast, is based upon the defendant's status as an employer. Such a claim requires the employer to answer for a tort committed by an employee against a third person "when the employer has either hired or retained the employee with knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm" (*Kirkman v Astoria Gen. Hosp., supra* at 403; *see Carnegie v J.P. Phillips, Inc.,* 28 AD3d 599, 600 [2006]; *Bellere v Gerics,* 304 AD2d 687 [2003]; *Ray v County of Delaware,* 239 AD2d 755 [1997]; *Mataxas v North Shore Univ. Hosp., supra*). "The employer's negligence lies in his having placed the employee in a position to cause foreseeable harm, harm which would most probably have been spared the injured party had

the employer taken reasonable care in making decisions respecting the hiring and retention of his employees" (*Detone v Bullit Courier Serv.,* 140 AD2d 278, 279 [1988]). Thus, a negligent hiring claim does not require the existence of any particular relationship between the plaintiff and the defendant employer (*see Rodriguez v United Transp. Co.,* 246 AD2d 178, 180 [1998]). Rather, the defendant is responsible for the harm its negligently hired employee causes to any third party.

In this case, the plaintiffs, in effect, assert a claim that the Hospital negligently hired Cortez, and thus invoke the exception to the general rule of nonliability for the acts of an independent contractor which provides that the principal may be held liable for "negligence . . . in selecting, instructing or supervising the contractor" (*Kleeman v Rheingold, supra* at 274).[1] The evidence submitted in support of and in opposition to the Hospital's motion for summary judgment, however, demonstrated that, even if United was aware of certain facts about Cortez that would have caused a reasonably prudent employer to further investigate his background, the Hospital had no such knowledge. Thus, even if the Hospital could be deemed to have "hired" Cortez, the Hospital had no reason to foresee Cortez's sexual misconduct (*see Mataxas v North Shore Univ. Hosp., supra*).

Our dissenting colleague advances an additional rationale: Because the Hospital did not ask United for Cortez's employment history or the results of any background check, the Hospital failed to establish its freedom from liability for negligent supervision or negligent instruction of its independent contractor, i.e., United. In our view, such a theory of liability is not viable in this case.

First, the duty to investigate a prospective employee, or to "institute specific procedures for hiring employees," is triggered only when the employer "knows of facts that would lead a reasonably prudent person to investigate the prospective employee" (*Kenneth R. v Roman Catholic Diocese of Brooklyn,* 229 AD2d 159, 163 [1997], *cert denied* 522 US 967 [1997]; *see Carnegie v J.P. Phillips, Inc., supra* at 600; *T.W. v City of New York,* 286 AD2d 243, 245 [2001]). The record in this case does not show that the Hospital had any reason to request an employment history or background check for Cortez.

Second, and more fundamental, the theory that a principal

---

1. This "exception" is not really an exception at all, since it holds the principal responsible for its own acts or omissions, rather than holding it vicariously liable for the acts or omissions of the independent contractor (*see Kleeman v Rheingold, supra* at 274 n 1).

has negligently supervised or instructed an independent contractor normally entails supervision or instruction as to the performance of the principal's work—that is, the work that is inherent in the principal's business or " 'accepted in the reasonable belief that the services are being rendered by the [principal]' " (*Miles v R & M Appliance Sales,* 26 NY2d 451, 454 [1970], quoting Restatement [Second] of Torts, § 429). It is not alleged in this case that the Hospital negligently supervised or instructed United in the provision of health care services. Rather, the theory articulated in the dissent is that the Hospital negligently supervised or instructed United in the business of hiring temporary staff members. That task, however, is collateral to the Hospital's main function. Unlike the emergency room doctor in *Mduba* and the process server in *Kleeman,* United was not engaged in its principal's primary business. Instead, the Hospital retained United to perform the important, but ancillary, function of supplying the Hospital with staff, a function which included conducting any necessary screening and background checks. We are aware of no authority for the proposition that supplying staff is so integral to the provision of health care services that a hospital may not delegate that task, and the liability for performing it negligently, to an independent contractor (*cf. Kleeman v Rheingold, supra* at 275).[2]

Our dissenting colleague emphasizes that, although the Hospital's contract with United provided that Cortez was an employee of United, the Hospital was afforded "sole discretion as to whether or not to accept referred personnel for a designated position." In our view, however, "accept [ing] referred personnel" is not the same as hiring personnel. We do not understand the Hospital's reservation of the "discretion" to

---

**2.** In *Kirkman v Astoria Gen. Hosp. (supra),* this Court dismissed the negligent hiring claim against Burns because there was no evidence that it had any knowledge of the security guard's propensity to commit rape, despite having "conducted a routine, but thorough, pre-employment check into the employee's background," which revealed no prior criminal history (*id.* at 403). While there is no evidence that United conducted a similar background check in this case, the significance of the *Kirkman* decision is that it imposed no duty upon *the hospital* to perform such an investigation. Although the duties of the security guard in *Kirkman* were collateral to the hospital's primary function of providing health care services, whereas Cortez's task of keeping watch over Sandra M. was an integral part of the Hospital's health care function, we ascribe no significance to this distinction, because Cortez's misconduct was outside the scope of his employment, and because any duty on the Hospital's part to scrutinize Cortez's background was no greater than that of the hospital in *Kirkman* to scrutinize the background of the security guard, who presumably had as much access to vulnerable patients and others lawfully present in the hospital as Cortez had.

accept or reject referred employees as imposing upon the Hospital a duty to independently screen those employees. Such a reading of the contract would essentially require the Hospital to replicate the work of United, thus defeating the purpose of retaining United. The Hospital relied on United to perform its hiring function for certain positions, and that reliance was reasonable as long as United continued to supply workers who exhibited no inappropriate behavior or propensities (see *Maristany v Patient Support Servs.*, 264 AD2d 302, 303 [1999] ["an employer has the right to rely on the supposed qualifications and good character of the contractor"]). Generally, in order for a party to be charged with foreseeing criminal or tortious conduct on its premises, there must be some prior occurrence of such conduct (see *Nallan v Helmsley-Spear, supra* at 519). In this case, there is no evidence in the record that United had ever before referred to the Hospital an employee who had committed any kind of assault, sexual offense, or other impropriety against a patient or any other person present at the Hospital.

Thus, the Hospital established that it had no duty to independently screen employees like Cortez who were recommended by United, and that it did not know or have reason to know of any propensity on Cortez's part to engage in sexually assaultive behavior. Moreover, as the Supreme Court correctly concluded, the Hospital demonstrated that any deficiency in its "written policies and procedures governing the staffing and operation of its suicide watch" was not a proximate cause of the plaintiffs' alleged injuries. The Hospital thereby made a prima facie showing of its entitlement to judgment as a matter of law. In opposition, the plaintiffs failed to raise a triable issue of fact. Accordingly, the Supreme Court properly granted the Hospital's motion for summary judgment dismissing the complaint insofar as asserted against it. Prudenti, P.J., Florio and Lunn, JJ., concur.

Goldstein, J., (dissenting and voting to reverse the judgment appealed from, on the law, and to deny the motion, and modify the order accordingly, with the following memorandum). At issue here is whether the defendant St. Luke's Roosevelt Hospital Center (hereinafter the Hospital) was entitled to summary judgment on the ground that it delegated its duty to exercise due care in selecting personnel providing health care services (see *Judith M. v Sisters of Charity Hosp.*, 93 NY2d 932 [1999]; *Bleiler v Bodnar*, 65 NY2d 65, 73 [1985]) to an independent contractor—the codefendant United Staffing Systems, Inc. (hereinafter United).

As noted by the majority, the Hospital obtained the services of

a nursing assistant for the specific function of caring for the plaintiff Sandra M., one-on-one, while she was on suicide watch as a patient. His duties included remaining "with[in] arms length and with direct eyesight of the patient at all times including when the patient is in the bathroom" and "[t]o provide patient care under the direction of the responsible Registered Nurse."

The nursing assistant's personnel file with United stated that he was discharged from a prior assignment for showing " 'suggestive' material" to children; he was previously convicted of a crime involving charges that he violated an order of protection with respect to his ex-wife; and was taking prescription medication which the plaintiffs claim is used in the treatment of manic episodes associated with bipolar disorder—a mental illness with typical symptoms of "grandiosity, poor judgment, aggressiveness and possible hostility."

Pursuant to its contract with United, the Hospital had the right to refuse any referral in its "sole discretion." The Hospital did, in fact, demand verification of qualifications. However, the Hospital did not ask for or receive the results of any background check nor did it inquire as to the existence of any negative information contained in the nursing assistant's personnel file.

The nursing assistant admitted that he engaged in sexual contact with Sandra M. while she was under his care, resulting in the instant action to recover damages, inter alia, for personal injuries sustained by Sandra M. In this action, the plaintiffs— Sandra M. and her husband—do not claim that the Hospital is vicariously liable for the nursing assistant's conduct on the theory of respondeat superior, since it is clear that the nursing assistant's conduct was not performed within the scope of his employment. Nor do the plaintiffs claim that the Hospital violated its duty as a landowner to protect persons lawfully on the premises from the reasonably foreseeable criminal or tortious acts of intruders (see Miller v State of New York, 62 NY2d 506, 513-514 [1984]; Nallan v Helmsley-Spear, Inc., 50 NY2d 507, 518-519 [1980]). The nursing assistant was not an intruder: he was engaged by the Hospital to perform services related to health care.

The question here is whether the Hospital's procedures with respect to obtaining staff to provide health care services were sufficient to ensure the safety of vulnerable patients.

After issue was joined, the Hospital moved for summary judgment based upon an affidavit of a registered nurse stating that to "a reasonable degree of medical certainty" in accordance with standards of care in the community, the Hospital's

procedures with respect to observation of suicidal patients were proper and appropriately implemented, and the Hospital was not negligent since it had the right to rely upon a warranty of United contained in the contract between United and the Hospital "that the personnel supplied pursuant to the contract would be appropriately qualified."

In opposition, the plaintiffs submitted an affirmation of a licensed physician stating that the Hospital did not meet the accepted standard of medical practice, inter alia, by failing to set standards for the evaluation of staff provided by an independent contractor, and by providing no mechanism to insure that adverse information that would raise suspicions about the suitability of such staff was provided to the Hospital.

The Supreme Court, in the order appealed from, found that the evidence in the nursing assistant's personnel file was "sufficient to raise a question of fact as to whether United knew or should have known of [its employee's] alleged propensity to cause the injuries alleged, and/or, notwithstanding its knowledge of facts that would lead a reasonably prudent agency to investigate, failed to conduct an adequate investigation of [its employee's] background." Nevertheless, the Supreme Court found that the Hospital was entitled to summary judgment on the grounds that it was not vicariously liable for any negligence of its independent contractor United, and there was no showing that the Hospital should have known of the nursing assistant's background.

However, to me, it is clear, that on its motion for summary judgment, the Hospital failed to establish its entitlement to judgment as a matter of law (*see Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]). The nurse's affidavit expressing opinions to "a reasonable degree of medical certainty" was incompetent to express such opinions since a nurse is not competent to render a medical opinion about the sufficiency of medical or psychiatric care (*see Elliot v Long Is. Home, Ltd.*, 12 AD3d 481, 482 [2004]; *LaMarque v North Shore Univ. Hosp.*, 227 AD2d 594 [1996]). The plaintiffs' cause of action against the Hospital is founded on the Hospital's alleged breach of its duty to exercise due care in selecting personnel providing health care services (*see Bleiler v Bodnar, supra* at 73; *Judith M. v Sisters of Charity Hosp., supra*) and to exercise due care in instructing and supervising its independent contractor, United (*see Adams v Hilton Hotels, Inc.*, 13 AD3d 175 [2004]; *see Diaz v New York Downtown Hosp.*, 287 AD2d 357 [2001], *affd* 99 NY2d 542 [2002]; *Maristany v Patient Support Servs.*, 264 AD2d 302 [1999]). The Hospital failed to establish as a matter of law that it satisfied those duties.

The "negative information" contained in the personnel file was sufficient to raise an issue of fact as to liability (*see Travis v United Health Servs. Hosps., Inc.,* 23 AD3d 884, 885 [2005]) since it gave rise to an issue of fact as to whether the nursing assistant's tortious conduct was foreseeable (*see T.W. v City of New York,* 286 AD2d 243 [2001]; *Blair v Defender Servs., Inc.,* 386 F3d 623 [2004]). Prior employment history clearly may have a bearing on future conduct and may be considered in conjunction with prior relevant criminal history in determining foreseeability (*see Great Northern Ins. Co. v Paino Assoc.,* 364 F Supp 2d 7, 24-25 [2005]).

The test is whether the Hospital should have known of the nursing assistant's background "upon reasonable inquiry" (*Sanchez v United Rental Equip. Co.,* 246 AD2d 524, 525 [1998]; *Dube v Kaufman,* 145 AD2d 595, 596 [1988]). The Hospital failed to establish as a matter of law that it conducted a reasonable inquiry (*see Melbourne v New York Life Ins. Co.,* 271 AD2d 296 [2000]). As previously noted, although the Hospital demanded verifications of the nursing assistant's qualifications from United, the Hospital did not ask for the results of any background check, nor did it inquire as to the existence of any negative information contained in the nursing assistant's personnel file.

The majority notes that there are cases which hold that where an inquiry has been conducted by obtaining references and/or obtaining the results of a background check, a more thorough inquiry is not triggered unless the employer "knows of facts that would lead a reasonably prudent person to investigate that prospective employee" (*T.W. v City of New York,* 286 AD2d 243, 245 [2001]; *see Doe v Whitney,* 8 AD3d 610, 612 [2004]; *Kenneth R. v Roman Catholic Diocese of Brooklyn,* 229 AD2d 159, 163 [1997], *cert denied* 522 US 967 [1997]; *Kirkman v Astoria Gen. Hosp.,* 204 AD2d 401, 403 [1994]). Contrary to the conclusion of the majority, these cases do not stand for the proposition that, absent any prior knowledge, there is no obligation to "make an inquiry, even on a cursory or routine basis" as to the staff member's honesty or trustworthiness (*Weiss v Furniture-In-The-Raw,* 62 Misc 2d 283, 284 [1969]; *see Maristany v Patient Support Servs., supra* at 303). Indeed, hiring without any inquiry may present a clear-cut case of negligent hiring (*see id.*).

The required depth of a background inquiry "may vary in reasonable proportion to the responsibilities of the proposed employment" (*Ford v Gildin,* 200 AD2d 224, 226 [1994]; *see Day v Hellenic Serv. Sta.,* 2 AD3d 482, 483 [2003]). "A hospital has a duty to safeguard the welfare of its patients, even from

harm inflicted by third persons, measured by the capacity of the patient to provide for his or her own safety" (*N.X. v Cabrini Med. Ctr.*, 97 NY2d 247, 252 [2002]; *see Doe v Orange-Ulster Bd. of Coop. Educ. Servs.*, 4 AD3d 387, 388 [2004]). The needs of a vulnerable population such as children, the disabled, or the infirm require greater care and supervision (*see Bell v Board of Educ. of City of N.Y.*, 90 NY2d 944, 947 [1997]). The plaintiff Sandra M. was in a particularly vulnerable position since she was sedated and under suicide watch. Under the circumstances, there is an issue of fact as to whether the Hospital's investigation of the background of this nursing assistant was deficient in light of the critical nature of the work performed (*see Lingar v Live-In Companions, Inc.*, 300 NJ Super 22, 692 A2d 61 [1997]).

*Kirkman v Astoria Gen. Hosp.* (*supra*, at 403), relied upon by the majority is distinguishable from the instant case, since in that case the independent contractor conducted "a routine, but thorough, pre-employment check into the employee's background, and obtained confirmation . . . that the employee had no prior criminal history." Moreover, the security guard—unlike the nursing assistant here—provided no health care services. Contrary to the conclusion of the majority, it is clear from this record that the nursing assistant had greater access to his vulnerable patient than would a hospital security guard, since his duties included remaining "with[in] arms length and with direct eyesight of the patient at all times including when the patient is in the bathroom."

The Hospital cannot absolve itself of liability on the ground that it delegated the responsibility to ascertain the nursing assistant's background and maintain a personnel file with respect to employment history to the independent contractor United. At issue here is whether the Hospital was negligent in failing to inquire as to what work was in fact done by United to screen staff based upon personal background and employment history and/or failing to direct United to follow an adequate hiring procedure with respect to staff referred to the Hospital to perform health care services (*see Travis v United Health Servs. Hosps., Inc.*, *supra* at 884-885; *Honohan v Martin's Food of S. Burlington*, 255 AD2d 627 [1998]; *Ray v County of Delaware*, 239 AD2d 755, 757 [1997]).

Sandra M. sought treatment from the Hospital which held itself out as an institution furnishing doctors, staff, and facilities and should not be bound "by secret limitations . . . contained in a private contract between the hospital" and United (*Mduba v Benedictine Hosp.*, 52 AD2d 450, 453 [1976]). As noted in *Mduba v Benedictine Hosp.* (*supra*), the Court of

Appeals in *Miles v R & M Appliance Sales* (26 NY2d 451 [1970]) adopted the rule set forth in the Restatement (Second) of Torts § 429: "One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by [its] servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them [itself] or by [its] servants."

The majority states that these principles are not applicable here on the ground that United's provision of staff to perform health care services was "collateral" to the Hospital's main function of providing health care services. Contrary to the majority's conclusion, the acquisition of suitable staff to perform health care services is necessary to the provision of health care services and cannot be considered "collateral" thereto (*see Bleiler v Bodnar, supra* at 73; *Howe v Medical Arts Ctr. Hosp.,* 261 App Div 1088 [1941], *affd* 287 NY 698 [1942]). Further, patients using the Hospital's services would reasonably believe that the Hospital had input in the selection of staff performing health care services. The staff person in issue here was not a secretary or a security guard.

With respect to foreseeability, the majority notes that there is no evidence that United previously referred an employee to the Hospital who committed an assault, sexual offense, or other impropriety. However, there is no evidence in the record that United never previously referred an employee to the Hospital who committed an assault, sexual offense, or other impropriety. Such information would be exclusively within the knowledge and control of the defendants which in and of itself is ground to deny them summary judgment (*see Juseinoski v New York Hosp. Med. Ctr. of Queens,* 29 AD3d 636 [2006]; *Baron v Incorporated Vil. of Freeport,* 143 AD2d 792, 793 [1988]). As previously noted, the Hospital, as movant for summary judgment, bore the burden of establishing its entitlement to judgment as a matter of law.

There is no authority for the proposition that the Hospital may insulate itself from liability by insuring that it receives no information as to the employee's personal background or employment history. Such would be contrary to case law establishing that there is a duty to make a reasonable inquiry (*see Melbourne v New York Life Ins. Co., supra*). Further, according to the plaintiffs' expert, providing no mechanism to insure that adverse information would be provided to the Hospital about the suitability of staff provided by an independent contractor for the performance of health care services was a departure from accepted standards of medical practice.

In view of the foregoing, the Hospital was not entitled to summary judgment.