PB-20 Doe v St. Nicodemus Lutheran Church (2024 NY Slip Op 03246)

PB-20 Doe v St. Nicodemus Lutheran Church

2024 NY Slip Op 03246

Decided on June 14, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 14, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., MONTOUR, OGDEN, AND KEANE, JJ.

120 CA 22-01891

[*1]PB-20 DOE, PLAINTIFF-APPELLANT,
v
ST. NICODEMUS LUTHERAN CHURCH, UPSTATE NEW YORK SYNOD OF THE EVANGELICAL LUTHERAN CHURCH IN AMERICA, DEFENDANTS, AND EVANGELICAL LUTHERAN CHURCH IN AMERICA, DEFENDANT-RESPONDENT. (ACTION NO. 1.) 
PB-21 DOE, PLAINTIFF-APPELLANT,
v
ST. NICODEMUS LUTHERAN CHURCH, UPSTATE NEW YORK SYNOD OF THE EVANGELICAL LUTHERAN CHURCH IN AMERICA, DEFENDANTS, AND EVANGELICAL LUTHERAN CHURCH IN AMERICA, DEFENDANT-RESPONDENT. (ACTION NO. 2.) (APPEAL NO. 1.) 

PHILLIPS & PAOLICELLI, LLP, NEW YORK CITY (VICTORIA E. PHILLIPS OF COUNSEL), FOR PLAINTIFFS-APPELLANTS.
GOLDBERG SEGALLA, LLP, BUFFALO (JAMES M. SPECYAL OF COUNSEL), FOR DEFENDANT-RESPONDENT. 

 Appeal from an order of the Supreme Court, Erie County (Deborah A. Chimes, J.), entered November 16, 2022. The order, among other things, granted the motion of defendant Evangelical Lutheran Church in America for summary judgment dismissing plaintiffs' complaints against it. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by denying those parts of the motion of defendant Evangelical Lutheran Church in America seeking summary judgment dismissing plaintiffs' first causes of action insofar as they assert claims for negligent retention, supervision, or direction and those parts seeking summary judgment dismissing plaintiffs' second causes of action insofar as they assert claims for fraudulent or negligent misrepresentation and reinstating those claims against it and as modified the order is affirmed without costs.
Memorandum: Plaintiffs commenced these actions pursuant to the Child Victims Act (see CPLR 214-g) alleging that they were sexually abused by the pastor of defendant St. Nicodemus Lutheran Church (St. Nicodemus).
In appeal No. 1, plaintiffs appeal from an order that, inter alia, granted the motion of defendant Evangelical Lutheran Church in America (ELCA) for summary judgment dismissing plaintiffs' complaints against it.
In appeal No. 2, plaintiffs appeal from that part of an order that granted the motion of defendant Upstate New York Synod of the Evangelical Lutheran Church in America (Synod) for [*2]summary judgment dismissing plaintiffs' complaints against it, and the Synod cross-appeals from that part of the order that denied its motion for summary judgment dismissing the cross-claims of St. Nicodemus against it for indemnification and contribution.
Plaintiffs contend in both appeals that Supreme Court erred in granting the motions for summary judgment because the ELCA and the Synod failed to establish their entitlement to judgment as a matter of law. We agree with plaintiffs that the court erred in dismissing plaintiffs' claims asserting negligent retention, supervision, and direction. "The 'threshold question' in any negligence action is whether a defendant owes a 'legally recognized duty of care to [a] plaintiff' " (Stephanie L. v House of the Good Shepherd, 186 AD3d 1009, 1011 [4th Dept 2020], quoting Hamilton v Beretta U.S.A. Corp., 96 NY2d 222, 232 [2001]). "An employer may be liable for a claim of negligent hiring or supervision if an employee commits an independent act of negligence outside the scope of employment and the employer was aware of, or reasonably should have foreseen, the employee's propensity to commit such an act" (Walden Bailey Chiropractic, P.C. v GEICO Cas. Co., 173 AD3d 1806, 1806-1807 [4th Dept 2019] [internal quotation marks omitted]). "The employer's negligence lies in having placed the employee in a position to cause foreseeable harm, harm which would most probably have been spared the injured party had the employer taken reasonable care in making decisions respecting hiring and retention of the employee" (Druger v Syracuse Univ., 207 AD3d 1153, 1154 [4th Dept 2022] [internal quotation marks omitted]).
"A cause of action for negligent hiring [or retention, supervision, or direction] . . . is based upon the defendant's status as an employer" (Sandra M. v St. Luke's Roosevelt Hosp. Ctr., 33 AD3d 875, 878 [2d Dept 2006]). Indeed, "it is essential, at the very least, that the person for whose negligent conduct the [defendant] is sought to be charged be engaged in its service" (Rosensweig v State of New York, 5 NY2d 404, 409 [1959]). In deciding whether an employment relationship exists, we consider, inter alia, who controls and directs the manner, details, and ultimate result of the employee's work (see Griffin v Sirva, Inc., 29 NY3d 174, 186 [2017]; Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010]; Fung v Japan Airlines Co., Ltd., 9 NY3d 351, 360 [2007]; State Div. of Human Rights v GTE Corp., 109 AD2d 1082, 1083 [4th Dept 1985]).
Here, the ELCA and the Synod moved for summary judgment dismissing plaintiffs' first causes of action on the ground that they did not employ the pastor and, therefore, did not owe plaintiffs a duty of care. In support of its motion for summary judgment dismissing the complaint, the Synod submitted evidence that St. Nicodemus hired plaintiffs' alleged abuser, paid his salary, provided him with a parsonage, supervised his daily activities as pastor, and had the sole authority to terminate his call with the congregation. However, the Synod also submitted its Constitution as an exhibit to its motion. Pursuant to its Constitution, the Synod was responsible "for the oversight of the life and mission of th[e] church in the [Synod's] territory," and those responsibilities included consultation with a congregation regarding the termination of a pastor's call, as well as the authority to discipline an ordained minister, up to and including by termination of that minister's call. To that end, the Synod's Constitution required it to create a "Committee on Discipline," "consistent with the procedures . . . in Chapter 20 of the ELCA constitution and bylaws." Inasmuch as the Synod's own submissions raised an issue of fact regarding its authority over the retention, supervision, and direction of plaintiffs' alleged abuser, it was not entitled to dismissal of plaintiffs' first causes of action to the extent that they assert negligent retention, supervision, and direction (see Johansmeyer v New York City Dept. of Educ., 165 AD3d 634, 636 [2d Dept 2018]).
In support of its motion for summary judgment dismissing the complaint, the ELCA also submitted evidence that St. Nicodemus hired plaintiffs' alleged abuser, paid his salary, provided him with a parsonage, supervised his daily activities as pastor, and had the sole authority to terminate his call with the congregation. Although the ELCA met its initial burden on its motion (see generally Szarewicz v Alboro Crane Rental Corp., 50 AD2d 770, 770-771 [1st Dept 1975], affd 40 NY2d 1076 [1976]; Robinson v Downs, 39 AD3d 1250, 1251 [4th Dept 2007]), we conclude that plaintiffs raised a triable issue of fact in opposition with respect to whether the ELCA employed the alleged abuser. In addition to the Synod's Constitution, plaintiffs submitted the ELCA's Constitution, Bylaws, and Continuing Resolutions (ELCA Constitution and Bylaws) in opposition to the ELCA's motion for summary judgment. The ELCA Constitution and Bylaws direct its secretary to maintain a roster of ordained ministers and warn that, if a [*3]congregation calls a minister who is not on the ELCA roster, it risks losing its status as an ELCA congregation. The ELCA Constitution and Bylaws also set forth the procedure for discipline of an ordained minister. Although the Constitution provides that congregations "shall have authority in all matters that are not assigned by the constitution and bylaws of this church to synods and the churchwide organization" (§ 9.31), the enumerated "[f]unctions" of the congregation do not include the discipline of pastors (see § 9.41 [a]-[i]). Rather, the Constitution provides that synods are responsible "for discipline of congregations, ordained ministers, and persons on the official lay roster; as well as for termination of call, appointment, adjudication, and appeals consistent with the procedures established by this church in Chapter 20 of the ELCA constitution and bylaws" (§ 10.21 [c]). Chapter 20 states that there must be "set forth in the bylaws a process of discipline governing ordained ministers" (§ 20.11), and directs that, because "synods have responsibility for admittance of persons into the ordained ministry of this church or onto other rosters of this church and have oversight of pastoral/congregational relationships, the disciplinary process shall be a responsibility of the synod on behalf of this church and jointly with it" (id. [emphasis added]). The Bylaws provide that "[a]ccountability for specific calls to service extended in predecessor church bodies shall be exercised according to the policies and procedures of this church" (§ 7.41.16 [emphasis added]). Thus, although the alleged abuser's call to service at St. Nicodemus was extended prior to the creation of the ELCA, accountability for his call was to "be exercised according to the policies and procedures of [the ELCA]" (id.).
Thus, according to the ELCA Constitution and Bylaws, the authority to discipline pastors within the ELCA was granted to the synods and the ELCA. The authority to remove a pastor from the roster of ordained ministers remained with the synods and the ELCA. Once a pastor was removed from the roster of ordained ministers, a congregation that chose to retain that pastor could be removed from the ELCA. The entire disciplinary process was created by and governed by the ELCA Constitution and Bylaws. Under these circumstances, we conclude that plaintiffs' submissions raised an issue of fact whether the ELCA and the Synod exercised sufficient control over the retention and supervision of plaintiffs' alleged abuser so as to constitute his employers (see generally State Div. of Human Rights, 109 AD2d at 1083).
As an alternative ground for affirmance, properly raised on appeal (see Verdugo v Fox Bldg. Group, Inc., 218 AD3d 1179, 1181-1182 [4th Dept 2023]), the ELCA contends that the court properly granted its motion with respect to plaintiffs' first causes of action because the ELCA established as a matter of law that the abuse did not occur on property owned by the ELCA and, therefore, it cannot be held liable. We reject that contention on the merits. The ELCA relies on the decision of the Court of Appeals in D'Amico v Christie for the proposition that liability for negligent hiring, retention, supervision, and direction may not be imposed against an employer where all of the improper acts "occurred off the employer's premises and did not involve the employer's property" (D'Amico v Christie, 71 NY2d 76, 88 [1987]; see generally Oddo v Queens Vil. Comm. for Mental Health for Jamaica Community Adolescent Program, Inc., 28 NY3d 731, 736 [2017]). In the pertinent section of D'Amico, however, the Court of Appeals determined that the employer was not liable for the injuries of the plaintiff because the employer was not in control of the employee's actions at the time of the injury-producing event. That lack of control was premised upon the fact that the employee had left the employer's property (see D'Amico, 71 NY2d at 88). Typically, once an employee has left their employer's property, the employer's authority and control over the employee ceases (see Roe v Domestic and Foreign Missionary Socy. of the Prot. Episcopal Church, 198 AD3d 698, 701 [2d Dept 2021]; "John Doe 1" v Board of Educ. of Greenport Union Free Sch. Dist., 100 AD3d 703, 706 [2d Dept 2012], lv denied 21 NY3d 852 [2013]).
However, to read into a claim for negligent hiring, retention, supervision, or direction a requirement that the injury-producing event occur on property owned by the employer is an unnecessarily restrictive interpretation of the "policy-driven analysis" used to determine the existence and scope of a tortfeasor's duty (Moore Charitable Found. v PJT Partners, Inc., 40 NY3d 150, 161 [2023]; see generally Jones v City of Buffalo, 267 AD2d 1101, 1102 [4th Dept 1999]). As the Court of Appeals recently outlined, "our framework ensures that an employer is liable . . . when it has notice of a particular employee's propensity for tortious conduct but neglects to reasonably supervise and control such employee, enabling the employee to harm third parties aided by the use of the employer's resources" (Moore, 40 NY3d at 161). Here, plaintiffs established that the pastor was able to build a relationship with them solely based upon the pastor's employment. PB-20 was introduced to the pastor through the pastor's position at St. [*4]Nicodemus, and attended Sunday School at the church, which the pastor taught. PB-21 was baptized by the pastor, traveled with the pastor during youth group events, and was subjected to the alleged abuse at a church picnic shelter and the parsonage. The pastor allegedly used his position to pressure plaintiffs into keeping the abuse a secret. Plaintiffs' submissions demonstrated that the off-premises abuse was preceded by, and continued during, a time period when plaintiffs were groomed by the pastor while he was engaged in his role as the ELCA's employee (see Johansmeyer, 165 AD3d at 636). Inasmuch as "[t]he employer's negligence lies in having placed the employee in a position to cause foreseeable harm, harm which would most probably have been spared the injured party had the employer taken reasonable care in making decisions respecting hiring and retention of the employee" (Druger, 207 AD3d at 1154 [internal quotation marks omitted]), we conclude that, under the circumstances of these cases, the fact that the alleged abuse occurred off-premises is not fatal to plaintiffs' first causes of action (see Waterbury v New York City Ballet, Inc., 205 AD3d 154, 162 [1st Dept 2022]).
We reject on the merits the ELCA's further alternative ground for affirmance, properly raised on appeal, that imposition of liability for negligent hiring, retention, supervision, and direction of the pastor is prohibited by the Free Exercise Clause of the First Amendment (see Kenneth R. v Roman Catholic Diocese of Brooklyn, 229 AD2d 159, 164-166 [2d Dept 1997], cert denied 522 US 967 [1997], lv dismissed 91 NY2d 848 [1997]).
Plaintiffs further contend in both appeals that their second causes of action were not duplicative of their first causes of action and that the court therefore erred in granting defendants' motions for summary judgment with respect to the second causes of action. With respect to plaintiffs' claims for fraudulent or negligent misrepresentation, asserted in their second causes of action, we agree with plaintiffs. "Generally, in a claim for fraudulent misrepresentation, a plaintiff must allege a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury" (Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 178 [2011] [internal quotation marks omitted]). With respect to negligent misrepresentation, such a claim "requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information" (id. at 180 [internal quotation marks omitted]). Inasmuch as we cannot conclude that those claims are "based on the same facts, allege[ ] the same wrongs, and seek[ ] the same relief" as plaintiffs' first causes of action (Olney v Town of Barrington, 180 AD3d 1364, 1365 [4th Dept 2020]; see Drake v Village of Lima, 221 AD3d 1481, 1483 [4th Dept 2023]), it was error to grant defendants' motions for summary judgment with respect to plaintiffs' claims of fraudulent or negligent misrepresentation. However, inasmuch as plaintiffs' second causes of action allege that defendants' liability was based upon their failure "to have in place an appropriate policy and/or practice for making hiring and assignment decisions," or to "have in place an appropriate policy and/or practice to monitor, supervise or oversee [the pastor's] interactions with minor[s] . . . in order to keep them safe from sexual abuse," those claims are "based on the same facts, allege[ ] the same wrongs, and seek[ ] the same relief" as plaintiffs' first causes of action, and were therefore properly dismissed as duplicative (Olney, 180 AD3d at 1365; see Drake, 221 AD3d at 1483).
In appeal No. 2, the Synod contends that the court erred in denying its motion for summary judgment dismissing St. Nicodemus's cross-claims against it. The Synod's contentions are unpreserved inasmuch as it failed to direct any portion of its motion for summary judgment to St. Nicodemus's cross-claims (see Henry v New Jersey Tr. Corp., 39 NY3d 361, 367 [2023]; Henry v Buffalo Mgt. Group, Inc., 218 AD3d 1233, 1234 [4th Dept 2023]).
We conclude that the orders should be modified by denying those parts of the motions of the Synod and the ELCA seeking summary judgment dismissing plaintiffs' first causes of action, insofar as they assert claims for negligent retention, supervision, or direction, and those parts seeking summary judgment dismissing plaintiffs' second causes of action, insofar as they assert claims for fraudulent or negligent misrepresentation, and reinstating those claims against them.
Entered: June 14, 2024
Ann Dillon Flynn
Clerk of the Court